# Seeherman v. Wilkes-Barre Co., Appellant.

*Jurors—Competency—Ownership of bond of party to issue—Exclusion.*

1. The right to reject jurymen is not a right to select. No party can acquire a vested right to have a particular member of a jury panel sit upon the trial of his cause, until he has been accepted and sworn. It is enough that it appear that the cause has been tried by an impartial jury; it is no ground of exception that against his objection, the juror was rejected by the court upon insufficient grounds unless through rejecting persons the necessity of accepting others not qualified has been purposely created.

2. No person should be permitted to serve on a jury who stands in any relation to a party to the cause that would carry with it prima facie evident marks of suspicion of favor.

3. A stockholder in a corporation is incompetent to serve as a juror in a case in which the corporation has an interest; but the mere fact that a juror owns a bond of a defendant corporation does not make him incompetent.

4. In an action against an electric company for damages for the death of plaintiff's son, it was not reversible error to reject a juror on the ground that he was the owner of a bond issued by defendant company, where it appeared that there were other competent jurors in the panel who were selected.

*Negligence—Electric companies—Defective transformer—Death —Res ipsa loquitur—Evidence—Precautions after accident—Trials —Remarks of counsel—Damages—Charge—Error in charge—Correction.*

5. Where in an action against an electric company to recover damages for the death of plaintiff's son due to the alleged unsafe condition of an electric transformer, an instrument attached to a pole near plaintiff's premises, the purpose of which was to reduce the dangerous current of electricity passing through the main wire to a safe current to be introduced into houses and all places for lighting purposes, the reduction being from a voltage of 2,300 to 110, it appeared that deceased, a fifteen year old boy, went to the barn and turned on the light; that when about to leave, deceased attempted to turn the switch for the purpose of extinguishing the light, and received a shock which killed him, the doctrine of res ipsa loquitur is applicable and a verdict for the plaintiff will be sustained.

6. In such a case it was error to overrule a motion to strike out evidence introduced under an offer to prove that shortly after the accident repairs to the transformer were made by defendant.

7. It is settled law in Pennsylvania that evidence of precautions taken after an alleged negligent act is not admissible for the purpose of showing antecedent negligence.

8. In such case it was error to refuse a continuance moved for on the ground of improper remarks by plaintiff's counsel in his speech to the jury, where it was admitted that he said that defendant's negligence might have justified a verdict of manslaughter in a prosecution against the officers of defendant company for criminal neglect and that when the remark was brought to the attention of the court, plaintiff's counsel not only failed to withdraw it but said, "I reiterate it now."

9. In such case the complaint that the instructions to the jury as to the measure of damages were not sufficiently definite, was not ground for reversal, where, although in the general charge the trial judge did not limit the jury to finding the present worth of the sum at which the decedent's services were valued, after his attention was called to the omission he gave further instructions to the effect that in estimating the value of future services the jury could allow only the present worth of the sum which they might find the value of those services to be.

*Damages—Present worth of future earnings—Annuity table.*

10. If it is desired that there shall be accuracy in calculation of the present worth of future earnings in negligence cases, proof should be made by means of annuity tables, of the present value of a series of payments of one dollar each payable through the required number of years. Proof of such tables may be made in a manner similar to that in which tables showing the expectancy of life are placed in evidence.

Argued April 11, 1916. Appeal No. 45, Jan. T., 1916, by defendant, from judgment of C. P. Luzerne Co., Jan. T., 1914, No. 132, on verdict for plaintiffs, in case of Louis Seeherman and Rosie Seeherman v. The Wilkes-Barre Company. Before POTTER, STEWART, MOSCHZISKER, FRAZER and WALLING, JJ. Reversed.

Trespass to recover damages for the death of plaintiffs' son. Before GARMAN, J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiffs for $3,287 and judgment thereon. Defendant appealed.

*Errors assigned* were rulings on evidence and in refusing a continuance.

*Wm. C. Price,* with him *Frank A. McGuigan* and *John T. Lenahan,* for appellant.

*Abraham Salsburg,* with him *Mose H. Salsburg,* for appellees.

OPINION BY MR. JUSTICE POTTER, July 1, 1916:

In this action of trespass, Louis Seeherman and Rosie Seeherman, his wife, sought to recover from The Wilkes-Barre Company, a corporation engaged in the manufacture and sale of electricity, damages for the death of their son, Isidor Seeherman, which it was alleged resulted from the negligence of defendant.

It appears from the evidence that a barn on the premises of plaintiffs was lighted by electricity furnished by defendant. A lamp in the middle of the building, hung from the ceiling, and a switch beside the door controlled the light. On the evening of July 21, 1913, about half-past seven, plaintiffs' son, Isidor, who was then fifteen years old, went to the barn, accompanied by a younger brother, for the purpose of attending to the horses. They turned on the light as they went in. The brother came out first and as Isidor attempted to turn the switch, to extinguish the light, he received a shock which killed him. It was alleged that the accident was due to the unsafe condition of a transformer, an instrument attached to a pole near plaintiffs' premises, the purpose of which was to reduce the dangerous current of electricity passing through the main wire, to a safe current to be introduced into houses and all places for lighting purposes, —the reduction being from a voltage of 2,300 to 110. Plaintiffs relied, however, on the doctrine of res ipsa

loquitur to establish a presumption of negligence, and
the trial judge instructed the jury that, under the cir-
cumstances of the case, that doctrine was applicable, and
the law imposed on defendant the burden of showing that
it was not negligent.   The trial resulted in a verdict for
plaintiffs, and defendant has appealed.   In the first as-
signment of error the action of the trial judge is ques-
tioned in sustaining the challenge to a juror upon the
ground that he was the owner of a bond issued by defend-
ant company.   In Hufnagle v. Delaware & Hudson Co.,
227 Pa. 476, our Brother MOSCHZISKER said (p. 479),
that "the general principle is laid down in our cases that
no person should be permitted to serve on a jury who
stands in any relation to a party to the cause that would
'carry with it prima facie evident marks of suspicion of
favor.' "   A stockholder in a corporation is incompetent
to serve as a juror in a case in which the corporation has
an interest: Silvis v. Ely, 3 W. & S. 420, 424; Irvine v.
Bank, 1 Pitts. Rep. 422.   In the present case, the inti-
mation that ownership of one of its bonds might influence
the juror favorably towards defendant was possibly far-
fetched.   But the rejection of the juror did defendant no
harm.   All that it was entitled to, was an impartial jury.
It had no right to the service of any particular juror.
In 1 Thompson on Trials (2d ed. 1912), Section 120, the
correct principle is thus stated: "The right to reject is
not a right to select.   No party can acquire a vested
right to have a particular member of the panel sit upon
the trial of his cause until he has been accepted and
sworn.   It is enough that it appear that his cause has
been tried by an impartial jury.   It is no ground of ex-
ception that, against his objection, a juror was rejected
by the court upon insufficient grounds, unless, through
rejecting qualified persons, the necessity of accepting
others not qualified has been purposely created.   Thus,
in the process of impaneling, no party is entitled, as of
right, to have the first juror sit who has the statutory
qualifications."   It was certainly desirable that the cause

should be tried by persons free even from the suspicion of partiality. That the doctrine of res ipsa loquitur was properly applicable to the facts of this case is clear from the decisions in Alexander v. Nanticoke Light Co., 209 Pa. 571; Crowe v. Nanticoke Light Co., 209 Pa. 580, and Delahunt v. United Telep. & Teleg. Co., 215 Pa. 241. The trial judge was right in charging the jury that the facts raised a presumption of negligence on the part of defendant, and in refusing to give binding instructions in its favor. The seventh, ninth, tenth and twelfth assignments of error are therefore dismissed. The question of the admissibility of evidence of repairs to the transformer made shortly after the accident, is raised in the fourth and fifth assignments. The testimony did not bear out the offer, being merely in substance that the witness saw a man on the pole working on the box, and three other men standing on the ground near by. The witness did not know what the box was, nor did he connect the men with defendant, so that the motion to strike out the testimony as immaterial should have been sustained. It must be regarded as settled law in Pennsylvania, that evidence of precautions taken after an alleged negligent act is not admissible for the purpose of showing antecedent negligence: Baran v. Reading Iron Co., 202 Pa. 274; Elias v. Lancaster, 203 Pa. 638; Matteson v. N. Y. Cent. & Hudson River R. R. Co., 218 Pa. 527.

The sixth assignment of error is to the refusal of the trial judge to withdraw a juror and continue the case on account of alleged improper remarks of plaintiffs' counsel in his closing speech to the jury. He admits that he said that defendant's negligence "might have justified a verdict of manslaughter in a prosecution (against the officers of defendant company) for criminal neglect." There was no warrant for making such a statement, and its only purpose must have been to excite the prejudice of the jury. When the remark was brought to the attention of the court, counsel not only failed to withdraw it, but said: "I reiterate it now." The very least that

the trial judge should have done, was to rebuke counsel and caution the jury to disregard the remark. The observation by this court upon this subject in Brown v. Central Penna. Traction Co., 237 Pa. 324, is appropriate here. It was there said (p. 327) : "In cases of this character it is the jury's duty to find the facts, and when the plaintiff is entitled to recover, to fix the amount of the damages; but the verdict should be given by way of compensation to the plaintiff and not punishment or warning to the defendant. To urge these latter considerations upon the attention of a jury merely serves to divert their minds from the proper line of thought and counsel indulge in such tactics at their peril." We sustain the sixth assignment of error.

Complaint is also made that the instructions to the jury as to the measure of damages, were not sufficiently definite. In the general charge the trial judge did not limit the jury to the present worth of the sum at which the son's services were valued. But when his attention was called to the omission he gave further instructions that, in estimating the value of future services, the jury could allow only the present worth of the sum which they might find to be the value of those services. This was practically all that was required, although the instructions might well have been more explicit in defining the elements to be considered. As an example of such definition, in Hockenberry v. New Castle Electric Co., 251 Pa. 394, Mr. Justice STEWART said (p. 399) : "What the wife would have received out of the wages of her husband was, of course, an element to be considered and determined, but only as basis for capitalization in a sum which would represent present value. She could have received a share in the wages only as the wages were earned; the verdict would be for a demand presently payable, the exact equivalent of the anticipated sum." In the present case, had the son lived, his earnings would have come in from year to year during his minority. In order to ascertain the equivalent of these amounts, in

one sum payable at the present time, the amount of the annual payments should, of course, be discounted.   If counsel desire accuracy in such calculation, proof should be made by means of annuity tables, of the present value of a series of payments of one dollar each payable through the required number of years.   From such a table the cost of any required annuity can readily be ascertained. Standard tables of this character are available and proof of them may be made in manner similar to that in which the tables showing the expectancy of life are placed in evidence.

The fourth, fifth, and sixth assignments of error are sustained, and the judgment is reversed, with a venire facias de novo.