535 A.2d 91

**COMMONWEALTH of Pennsylvania**

v.

**Rev. Daniel BERRIGAN, S.J., Rev. Philip Berrigan, Sister Anne Montgomery, Elmer H. Maas, Rev. Carl Kabat, John Schuchardt, Dean Hammer, Molly Rush, Appellants.**

Superior Court of Pennsylvania.

Argued May 12, 1986.

Filed Dec. 3, 1987.

146

148

Ramsey Clark and Peter D. Goldberger, Philadelphia, for appellants.

Mary Ann Killinger, Assistant District Attorney, Norristown, for Com., appellee.

Before CAVANAUGH, BROSKY, McEWEN, DEL SOLE, BECK, TAMILIA, KELLY, POPOVICH and JOHNSON, JJ., en banc.

BECK, Judge:

This appeal is on remand from the Pennsylvania Supreme Court, which reversed the Superior Court's grant of a new trial and directed the Superior Court to consider appellants' remaining allegations of error. Appellants continue to assert that the trial judge erred by improperly conducting voir dire, excluding relevant evidence, incorrectly charging the jury, communicating with the jury outside the presence of the parties, denying motions to recuse, and imposing invalid sentences.

After careful consideration of the issues, we conclude that appellants are not entitled to a new trial. However, since we find that the trial judge should have recused from sentencing and that the sentences imposed were based in part on impermissible considerations, we vacate the judgments of sentence and remand for resentencing before a different judge.

On September 9, 1980, the eight appellants entered a General Electric plant in King of Prussia, Pennsylvania, which manufactured components for the Minute Man Mark 12A, a United States Air Force nuclear missile. As a protest against the nuclear arms race, they beat missile components with hammers and poured human blood on the premises. On March 6, 1981, following a trial by jury in the Court of Common Pleas of Montgomery County, each appel-

lant was convicted of burglary, criminal mischief, and criminal conspiracy. 18 Pa.Cons.Stat.Ann. §§ 3502, 903, 3304 (Purdon, 1983). The trial judge sentenced appellants to prison terms on July 28, 1981, and appellants filed a timely appeal to this court.

In *Commonwealth v. Berrigan*, 325 Pa.Super. 242, 472 A.2d 1099 (1984), an en banc panel of this court vacated the sentences and remanded for a new trial on the grounds that the trial judge had erred by conducting voir dire with groups of four jurors at a time, by excluding the public from voir dire, and by excluding evidence tending to establish a justification defense under section 510 of the Crimes Code. The Commonwealth appealed this decision to the Pennsylvania Supreme Court, which reversed on all three grounds. *Commonwealth v. Berrigan*, 509 Pa. 118, 501 A.2d 226 (1985).

In its original opinion, dated November 22, 1985, the Supreme Court reinstated appellants' (then appellees) judgments of sentence. Upon reconsideration, however, the Supreme Court, by per curiam order dated February 24, 1986, vacated its reinstatements of the judgments of sentence. The Court then "remanded to the Superior Court for disposition of all issues raised in that court, but not yet considered." 509 Pa. at 142–43, 501 A.2d at 239. We now consider those issues left undecided following the original appeal.

In the interests of clarity, we have divided appellants' original allegations of error into the following categories. For the reasons noted below, issues 1, 2, 8, 9, 14, and 15 are not presently before us for review.

1. The trial court's refusal to conduct individual voir dire.

We reversed on this issue. 325 Pa.Super. at 261–65, 472 A.2d at 1108–10. The Supreme Court reversed our decision and affirmed the trial court. 509 Pa. at 135–37, 501 A.2d at 235–36.

2. The exclusion of the public from voir dire.

We reversed on this issue. 325 Pa.Super. at 265–67, 472 A.2d at 1110–11. The Supreme Court reversed our decision and affirmed the trial court. 509 Pa. at 126–35, 501 A.2d at 230–235.

3. The trial court's unwillingness to consider challenges for cause until after all prospective jurors were examined.

4. The trial court's failure to preserve the juror strike-off sheet and the text of voir dire questions submitted by the defense.

5. The trial court's refusal to grant the defense more than a minimum number of peremptory strikes.

6. The denial of seven challenges for cause.

7. The trial court's limitations on questions probing possible bias on the part of jurors during voir dire.

8. The exclusion of evidence relating to the defense of "justification generally". 18 Pa.Cons.Stat.Ann. § 503 (Purdon, 1983).

We affirmed the trial court as to this issue. 325 Pa.Super. at 250, 472 A.2d at 1103. *See infra* pp. 163–165.

9. The exclusion of evidence relating to the defense of "justification in property crimes". 18 Pa.Cons.Stat.Ann. § 510 (Purdon, 1983).

We reversed on this issue. 325 Pa.Super. at 256–61, 472 A.2d at 1106–1108. The Supreme Court reversed our decision and affirmed the trial court. 509 Pa. at 123–26, 501 A.2d at 229–230.

10. The exclusion of evidence relating to the defense of justification pursuant to the "execution of a public duty". 18 Pa.Cons.Stat.Ann. § 504 (Purdon, 1983).

11. The exclusion of evidence indicating a lack of criminal intent. 18 Pa.Cons.Stat.Ann. §§ 302, 304 (Purdon 1983).

12. The trial court's failure to charge the jury correctly as to the availability of justification defenses and the legal significance of criminal intent.

13. The trial court's ex parte communications with the jury during deliberations.

14. The issuance of defective informations.
 We affirmed the trial court as to this issue. 325 Pa.Super. 271–72, 472 A.2d at 1113–14.

15. The fact that appellants were convicted of both burglary and criminal mischief (the underlying offense).
 Appellants have now abandoned this claim. Supplemental Brief of the Appellants on Remand at 4 n. 1.

16. The judge's failure to recuse at trial.

17. The judge's failure to recuse at sentencing.

18. The imposition of excessive sentences based on impermissible considerations.

We will address the remaining outstanding issues in sequential order.

## I. VOIR DIRE ISSUES

Appellants' first seven claims all relate to the manner in which the trial court conducted voir dire. The Supreme Court has already found that objections 1 and 2 are without merit. We now affirm the trial court as to the five additional voir dire issues.

### A.

As issue 3, appellants contend that the trial court erred by delaying consideration of challenges for cause until after the entire voir dire panel had been interviewed and by refusing to segregate jurors who were later removed for cause. In order to evaluate this argument, we must first determine what system of voir dire the trial court employed.

Pennsylvania Rule of Criminal Procedure 1106 describes two alternate systems of voir dire: individual voir dire, R. 1106(e)(1), and the list system of challenges, R. 1106(e)(2). Under the individual system, each prospective juror is examined in turn and both peremptory and for cause challenges are exercised immediately after the juror is examined, before moving on to the next juror.

Under the list system, a list of at least twelve prospective jurors is prepared and jurors may be examined either collectively or individually. Challenges for cause "shall be exer-

cised orally as soon as the cause is determined." R. 1106(e)(2)(C). When all cause challenges have been exercised, the list is passed between prosecution and defense for peremptory strikes. R. 1106(e)(2)(F).

In the instant case, the procedure challenged by the appellants was instituted by the trial court on the second day of voir dire, February 24, 1981:

> THE COURT: Contrary to what I told you yesterday, we are going to take four jurors at a time, because it was rather crowded back there with everybody in here. We are going to voir dire four jurors at a time in accordance with these questions.
>
> When you are finished with each of these four jurors, they will be taken back, and then the next four and the next four, until you have interviewed the whole panel. Then the whole panel will be brought back in here for you to make whatever determinations you want to make.

N.T. Feb. 24, 1981 at 118.

One of the appellants objected, suggesting that "as soon as there is really good evidence that somebody is prejudiced, if he or she could be removed" on the basis that such jurors might "infect" the others. *Id.* at 119. The court responded that such concern was the reason for the procedure of voir dire by panels of four and stated that, after examination, each panel of four would be instructed not to talk with other jurors and would be isolated. On the next day, the court clarified the procedure in the following exchange:

> [Appellant] JOHN SCHUCHARDT: Could you tell us just where we are now, and a little bit about the procedure and what's happening outside the courtroom? How many jurors have been removed for cause? Are those jurors, once they are removed for cause, sent home, or do they go back to the jury room?
>
> THE COURT: There have been, up to this point, only two jurors removed for cause, which were previously taken care of at side bar. They are still back amongst the panel. They were instructed not to discuss it with any-

body. Your challenges for cause will be taken when the entire panel is assembled. After that, you will then proceed to strike your challenges which are peremptory to each.

[Appellant] DEAN HAMMER: Can you just clarify that one step further—not to prolong it, but is that a change in the process that we had going yesterday?

THE COURT: No.

DEAN HAMMER: So, during the process, if someone has exempted themselves by admitting that they are prejudiced, then we just—

THE COURT: You just put a "C" next to their name, and when the whole thing—when the whole panel is assembled, we will then retire—or have the panel kept out—and you will then be able to make your challenges for cause.

DEAN HAMMER: At the end of the complete voir dire process?

THE COURT: Right.

N.T. Feb. 25, 1981 at 519–20.

Although Rule 1106(e) provides that "the trial judge shall select one of the following alternative methods of voir dire," this court has previously accepted a hybrid system that combined elements of both the list system and the individual system. *See Commonwealth v. Pittman,* 320 Pa.Super. 166, 174–76, 466 A.2d 1370, 1374 (1983). We conclude that the voir dire challenge system adopted by the trial court in the instant case was a hybrid system more closely approximating the list system of Pa.R.Crim.P. 1106(e)(2).

We must therefore determine whether the trial judge abused his discretion when, using a list system of challenges, he deferred challenges for cause until after all prospective jurors were examined. Pennsylvania Rule of Criminal Procedure 1106(e)(2)(C) requires that "[c]hallenges for cause shall be exercised as soon as the cause is determined." Pennsylvania Rule of Criminal Procedure 1106(e)(2)(D) provides: "When a challenge for cause has been sustained, which brings the total number on the list

156

below the number of twelve (12) plus alternates plus peremptory challenges (including alternates), additional prospective jurors shall be added to the list." Although a party challenging a juror must do so "as the cause arises," Pa.R.Crim.P. 1106 Comment, the rule does not say whether the court must immediately rule on the challenge or immediately dismiss excludable jurors.

In the instant case, it appears that the court's procedure provided for most of the cause challenges to be made after the entire panel was interviewed but before any peremptory challenges. It is certainly preferable if challenges for cause are permitted to be made orally as soon as counsel making the challenge discerns cause to do so, and that the trial court rule immediately on such challenges and upon sustaining any challenge, dismiss from service the challenged juror.

The method of voir dire is, however, largely within the discretion of the trial court. *See Commonwealth v. Pittman*, 320 Pa.Super. at 172–74, 466 A.2d at 1373. We conclude that the requirement of Rule 1106 that challenges be made "as cause arises" imposes an obligation on the *parties* to make prompt challenges, but imposes no obligation on the court to make immediate rulings on those challenges. We find that the trial court did not err in postponing challenges for cause until all jurors had been interviewed.

We also find that the court did not commit reversible error by refusing to segregate individual jurors pending consideration of challenges for cause. Appellants have not established that they were prejudiced as a result of contact among potential jurors. Nor do we believe that under the facts of the instant case this contact was so inherently prejudicial that a new trial should be afforded even without a specific showing of harm. *Cf. Commonwealth v. Stewart*, 449 Pa. 50, 295 A.2d 303 (1972) (overturning conviction where father of defendant's alleged victim remained with jury panel for over two days). Here the court's instructions cautioning potential jurors not to discuss the case upon

returning to the jury room were sufficient to ensure a fair trial.

### B.

As issue 4, appellants contend that the court erred by failing to preserve in the record the jury strike-off sheet and the text of voir dire questions which the defense submitted in writing to the court. On the third day of voir dire, the trial judge announced:

> I am now going to conduct the voir dire. Any additional questions that will be asked can be submitted to me in writing. During the voir dire, you will have the opportunity to write down what additional questions you would like to ask. I will make rulings on those as to each of the four that are in the box, and they will become part of the record of this case.

N.T. Feb. 25, 1981 at 412. The trial transcript indicates that written questions were submitted to the court, but no memorialization of such questions exists in the record.

■ The Superior Court, in reversing on other grounds, directed that on remand proposed questions submitted by appellants "shall be retained to become part of the record." 325 Pa.Super. at 265, 472 A.2d at 1110. The panel also directed preservation of the strike-off sheet. *Id.* We must now consider whether the trial court's failure to preserve these matters in the record constituted reversible error. We find that it does not.

Pennsylvania Rule of Criminal Procedure 1106(c) provides, in part, that "[v]oir dire, including the judge's ruling on all proposed questions, shall be recorded in full unless the recording is waived." Pennsylvania Rule of Criminal Procedure 1106(d) permits the trial judge to conduct the voir dire examination and to require the parties to submit written proposed questions to be asked of the prospective jurors.

We find that the court complied with Rule 1106 by including the entire voir dire transcript in the record. No requirement exists that either the juror strike-off sheet or

written questions submitted by parties must be preserved. *Commonwealth v. Smith*, 285 Pa.Super. 460, 427 A.2d 1378 (1981), cited by appellants, is inapposite. *Smith* refers only to a defendant's right to a transcript of the voir dire. We conclude that the trial court has provided us with a "record of sufficient completeness" to allow for meaningful appellate review. *See Commonwealth v. Lyons*, 346 Pa.Super. 585, 591, 500 A.2d 102, 105 (1985). Moreover, appellants do not point to any specific issues that we are unable to review because of the claimed deficiencies in the record. We decline to reverse on this basis.

## C.

As issue 5, appellants object to the grant of only the minimum number of peremptory challenges. Under Pa.R. Crim.P. 1126(b)(1), the eight defendants were entitled to a minimum of two peremptory challenges each, or a total of sixteen challenges. The trial court afforded appellants sixteen peremptory challenges. N.T. Feb. 24, 1981 at 247.

Under Pa.R.Crim.P. 1126(b)(2), however, the trial judge has discretion to increase the number of peremptory challenges. Appellants argue that the court abused its discretion in refusing to do so.

Appellants' argument is premised on prejudicial pre-trial publicity surrounding the case, an asserted conflict of interest among the appellants, and the differing personal and religious backgrounds of the appellants. The Supreme Court concluded that there was no record of prejudicial pre-trial publicity, 509 Pa. at 136, 501 A.2d at 236; appellants waived the conflict of interest, N.T. Feb. 23, 1981 at 92; and appellants do not allege how their different backgrounds would have led them to exercise differing peremptory challenges. We find that appellants have not demonstrated that they were prejudiced by the limitation of peremptory challenges. *See Commonwealth v. Morales*, 508 Pa. 51, 494 A.2d 367 (1985).

## D.

■ As issue 6, appellants assert that the trial court erred by failing to excuse seven prospective jurors for cause. A challenge for cause should be granted under two circumstances: (1) when a venireman has such a close relationship, be it familial, financial, or situational, with any of the parties, counsel, victims, or witnesses that a likelihood of prejudice should be presumed, and (2) when a venireman's answers and conduct demonstrate a likelihood of prejudice. *Commonwealth v. Colson*, 507 Pa. 440, 454, 490 A.2d 811, 818 (1985), *cert. denied*, 476 U.S. 1140, 106 S.Ct. 2245, 90 L.Ed.2d 692 (1986).

■ Appellants suggest that four panel members fit within the first category. They were: (1) a woman who owned stock in General Electric but who stated that the impact of any decision in the case on her financial well-being would be "very minute," N.T. Feb. 26, 1981 at 808; (2) a vice-president for marketing of a company which had some government defense contracts, N.T. Feb. 27, 1981 at 1041–1043; (3) the daughter of a man who worked as a manager in General Electric's Philadelphia office but who was not involved with the manufacture of military equipment, N.T. Feb. 25, 1981 at 494–495; and (4) a title researcher who frequently worked in the Montgomery County Courthouse, N.T. Feb. 25, 1981 at 472–475. All four of these individuals said that they would be impartial jurors.

"A remote relationship to an involved party is not a basis for disqualification where a prospective juror indicates during voir dire that he or she will not be prejudiced." *Commonwealth v. Colson*, 507 Pa. at 454, 490 A.2d at 818. We find that these four veniremen had sufficiently remote financial, familial, and situational contacts to qualify as jurors at the trial.

Appellants also argue that three panel members should have been excused in light of their answers and conduct during the voir dire interview.

■ The twenty-fifth panel member interviewed expressed some doubts as to whether she could be objective. N.T. Feb. 27, 1981 at 1069. Appellants, however, do not cite in their brief to any place in the notes of testimony where we can find a challenge for cause as to this juror. We have independently reviewed the record, and we conclude that appellants did not make a timely specific objection. *See Commonwealth v. Aljoe*, 420 Pa. 198, 216 A.2d 50 (1966) (challenge waived if not made before jury sworn).

■ Another juror admitted to having a low opinion of one of appellants' trial counsel. However, he also stated that he did not believe that this opinion would in any way prejudice him, and that he had no preconceived attitude toward appellants. N.T. Feb. 26, 1981 at 762, 771. We conclude that the challenge for cause of this juror was properly denied.

■ Finally, one juror initially indicated a reluctance to afford the defendants the presumption of innocence or to apply only the facts adduced at trial. This juror, a Mrs. Reynolds, was juror number two of the second four-juror panel or "Juror Six" overall. N.T. Feb. 24, 1981 at 194–201; N.T. Feb. 25, 1981 at 1113–14. The final question addressed to that panel and the answers were as follows:

Is there anyone here who could not follow the Court's instructions that the burden is upon the Commonwealth to prove the defendants' guilt beyond a reasonable doubt? JUROR NUMBER ONE: I could follow that instruction. JUROR NUMBER TWO: Yes.

N.T. Feb. 24, 1981 at 197–98.

Previous cases have upheld a trial court's refusal to excuse a juror where the juror was somewhat less than unequivocal in asserting that he or she could put aside any preconceptions and render a verdict solely on the evidence. *See Commonwealth v. Maxwell*, 355 Pa.Super. 575, 587, 513 A.2d 1382, 1388 (1986), allocatur granted, 513 Pa. 633, 520 A.2d 1384 (1987) (juror testified "I would try to follow the law. I'm not sure if I might be a little bit biased but I

would try to."). *See generally Commonwealth v. Williams*, 514 Pa. 62, 67–71, 522 A.2d 1058, 1061–1062 (1987).

As the United States Supreme Court has noted, it is not unusual for jurors to give ambiguous and at times contradictory testimony on voir dire, "particularly in a highly publicized criminal case," *Patton v. Yount*, 467 U.S. 1025, 1038–39, 104 S.Ct. 2885, 2892–93, 81 L.Ed.2d 847 (1984). The Court found that prospective jurors, unlike witnesses,

> have had no briefing by lawyers prior to taking the stand. Jurors thus cannot be expected invariably to express themselves carefully or even consistently. Every trial judge understands this, and under our system it is that judge who is best situated to determine competency to serve impartially. The trial judge properly may choose to believe those statements that were the most fully articulated or that appeared to have been least influenced by leading.

*Id.* at 1039, 104 S.Ct. at 2893.

This court has held that a trial court abused its discretion in refusing to excuse a juror who "had a sincere, substantial and persistent doubt concerning his ability to follow the court's instructions." *Commonwealth v. McBee*, 267 Pa. Super. 49, 405 A.2d 1297 (1979). Our reading of Mrs. Reynolds' voir dire in the instant case does not reveal such a "sincere, substantial and persistent doubt." We find that this trial court did not abuse its discretion in refusing this challenge for cause.

### E.

██ Finally, as issue 7, appellants contend that the trial court unduly limited inquiries into possible juror bias.[1] They maintain that a more detailed examination of many of

---

1. One section of appellants' brief is confusingly entitled "The Trial Judge's Disregard of the Effects of Pre–Trial Publicity Was Complemented Both By His General Indifference To Accepted Voir Dire Requirements And His Specific Bias Against The Defendants." We consider the allegation of judicial bias at pp. 168–173 *infra.*

the jurors was necessary—especially in light of the widespread publicity which their case received before trial.

Although the Pennsylvania Supreme Court did not explicitly address this precise issue, the following excerpt from the Court's opinion in *Commonwealth v. Berrigan* is particularly relevant:

Having had the opportunity to observe the demeanor of the prospective jurors and to assess the tenor of their answers and having participated in the examination of the prospective jurors, the trial judge determined that those who were selected would give fair and impartial consideration to the evidence without being "locked-in" to any pre-conceived notions gained from media coverage. The trial court's determination is entitled to great weight by an appellate court, *Commonwealth v. Bachert*, 499 Pa. 398, 453 A.2d 931 (1982), and only palpable error resulting in an abuse of discretion justifies reversal on this issue. *Commonwealth v. Sparrow*, 471 Pa. 490, 370 A.2d 712 (1977). We find no such palpable error in this record.
. . . .
Our review of the record reveals no abuse of discretion in questioning four prospective jurors at a time, or in the manner the questioning was conducted. We are satisfied that a competent, fair, impartial, and unprejudiced jury was selected. *Commonwealth v. Futch*, 469 Pa. 422, 366 A.2d 246 (1976).

509 Pa. at 137, 501 A.2d at 236.

Even in the absence of a holding directly on point, the Supreme Court's interpretation of the same record now before us is entitled to considerable weight. We hold that the manner in which the trial judge conducted voir dire—including the restrictions placed on supplementary questions by counsel—does not rise to the level of reversible error.

## II. EXCLUSION OF EVIDENCE

At trial, appellants unsuccessfully sought to introduce expert testimony concerning the dangers of nuclear war as well as personal testimony concerning their knowledge of

the dangers of nuclear war. They hoped to demonstrate that the missile components manufactured by General Electric posed a threat of nuclear catastrophe, and that they had vandalized property only in order to help prevent this catastrophe.

Appellants assert that by excluding this evidence, the trial judge wrongfully deprived them of an opportunity to establish defenses which are recognized under Crimes Code sections relating to criminal intent: §§ 302, 304, and justification: §§ 503, 504, and 510. We conclude as discussed below that these defenses were not available to the appellants, and that therefore the trial court's evidentiary rulings were not in error.

## A.

Issues 8, 9, and 10 all involve the claim that appellants' actions were legally justified. Appellants rely on three sections of the Crimes Code which concern the justification doctrine—section 503, section 510, and section 504.

Appellants' attempt to invoke sections 503 and 510 has been previously disapproved.[2] This court has already ruled

**2.** These provisions are as follows:

§ 503. Justification generally

(a) General rule.—Conduct which the actor believes to be necessary to avoid harm or evil to himself or to another is justifiable if:

(1) the harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offenses charged;

(2) neither this title nor other law defining the offense provides exceptions or defenses dealing with the specific situation involved; and

(3) a legislative purpose to exclude the justification claimed does not otherwise plainly appear.

(b) Choice of evils.—When the actor was reckless or negligent in bringing about the situation requiring a choice of harms or evils or in appraising the necessity for his conduct, the justification afforded by this section is unavailable in a prosecution for any offense for which recklessness or negligence, as the case may be, suffices to establish culpability.

§ 510. Justification in property crimes

Conduct involving the appropriation, seizure or destruction of, damage to, intrusion on or interference with property is justifiable

that appellants cannot assert an independent justification defense pursuant to section 503:

> In *Commonwealth v. Capitolo,* [324] Pa.Super. [61], 471 A.2d 462 (1984), we held that the appellants who had tried to prove justification in defense of charges of trespass on the grounds of a nuclear power plant, were required to meet the requirements of Section 510. We so hold in the instant case in which appellant's conduct involves damage to, intrusion on or interference with property.

> In *Capitolo, supra,* 324 Pa.Superior Ct. at 61, 471 A.2d 462, we explained that because "Section 503 contains a general principle applicable to all crimes ... it must yield to more specific formulations dealing with the particular situation posed in any concrete case." (citing Model Penal Code, Scope of Article 3, at 1). We therefore concluded that to the extent Sections 503 and 510 are consistent, the requirements of both must be met by defendants seeking to prove justification.

325 Pa.Super. at 251, 472 A.2d at 1103.

Thus, appellants' section 503 defense was subsumed within their section 510 defense. Moreover, this section 510 defense was explicitly rejected by the Pennsylvania Supreme Court. The Court found that section 510 protects only those defendants who acted to avoid a clear and imminent public disaster. The Court then found:

> In the case *sub judice,* Appellees attempted to justify their actions by relying on the argument that their actions were permitted by Section 510 to avert a nuclear holocaust. Reviewing this offer [of proof], we conclude that the trial court acted properly in ruling, as a matter of law, that the offer was insufficient to establish that the harm Appellees perceived was a clear and imminent public disaster.

under circumstances which would establish a defense of privilege in a civil action based thereon, unless:

(1) this title or the law defining the offense deals with the specific situation involved; or

(2) a legislative purpose to exclude the justification claimed otherwise plainly appears.

509 Pa. at 124, 501 A.2d at 229–30. We conclude that for purposes of the instant case, sections 503 and 510 represent a single defense and this defense is not available to appellants.

■ Appellants next direct our attention to section 504 of the Crimes Code. Section 504 provides in part that:

... conduct is justifiable when it is required or authorized by ...

(4) The law governing the armed services or the lawful conduct of war.

(5) Any other provision of law imposing a public duty.

Appellants assert that their conduct was required or authorized by principles of international law. They further contend that their conduct was required or authorized by section 3303 of the Crimes Code.[3] We conclude that the trial court did not abuse its discretion by finding in this fact situation that neither principles of international law nor section 3303 authorized or required appellants' conduct.

## B.

■ Issue 11 concerns the exclusion of evidence allegedly indicating a lack of criminal intent. Appellants contend that the court abused its discretion by excluding evidence tending to negate the specific intent required for the crimes with which they were charged. They contend that their evidence would have shown that they did not intend to commit criminal acts. We note that specific intent requires proof only that an actor consciously intended to engage in conduct which the statute prohibits. 18 Pa.Cons.Stat.Ann. § 302(b)(1)(i) (Purdon 1983).[4] The law does not require

3. 18 Pa.Cons.Stat.Ann. § 3303 (Purdon 1983). This section provides:
 A person who knowingly or recklessly fails to take reasonable measures to prevent or mitigate a catastrophe, when he can do so without substantial risk to himself, commits a misdemeanor of the second degree if:
 (1) he knows that he is under an official, contractual or other legal duty to take such measures; or
 (2) he did or assented to the act causing or threatening the catastrophe.

4. Section 302. General requirements of culpability

proof that the actor consciously intended to commit an act which he or she knew to be illegal. Thus, evidence relating to appellants' subjective awareness of the illegal nature of their acts was not relevant. The court's exclusion of such evidence was proper.

Appellants further contend that the evidence which they would have presented would have established a reasonable mistake of fact which would have negated their specific intent. *See* 18 Pa.Cons.Stat.Ann. § 304 (Purdon 1983).[5] However, the only discussion of such beliefs in appellants' brief relates to the claimed affirmative defense of justification. The Supreme Court found that "... the actions chosen by [appellants] ... could not under any circumstances reasonably be expected to be effective in avoiding the perceived public disaster of a nuclear holocaust." 509 Pa. at 125, 501 A.2d at 230. We conclude that the trial court did not abuse its discretion in excluding such evidence.

## III. JURY INSTRUCTIONS

As issue 12, appellants claim that the trial court did not properly charge the jury as to appellants' justification defenses under sections 503, 504 and 510. The Supreme Court has already noted that "... the trial court committed no error in refusing [appellants'] request to charge on Section 510 ..." 509 Pa. at 125, 501 A.2d at 230. Since we now confirm that appellants were not entitled to invoke any of the three statutory provisions, it follows that the trial

(b) Kinds of culpability defined.—
(1) A person acts intentionally with respect to a material element of an offense when:
 (i) if the element involves the nature of his conduct ... it is his conscious object to engage in conduct of that nature ...

5. Section 304. Ignorance or mistake
Ignorance or mistake as to a matter of fact, for which there is reasonable explanation or excuse, is a defense if:
 (1) the ignorance or mistake negatives the intent, knowledge, belief, recklessness, or negligence required to establish a material element of the offense; or
 (2) the law provides that the state of mind established by such ignorance or mistake constitutes a defense.

court did not err by generally instructing the jury that the justification defense was unavailable.

Appellants also object to the trial court's instructions as to criminal intent. Read as a whole, we find that these instructions adequately summarize the law.

## IV. EX PARTE COMMUNICATIONS

■■■ As issue 13, appellants argue that they must be afforded a new trial because the trial judge responded to three questions posed by the jury while appellants were not present. We conclude that the trial court's error, if any, was harmless.

Approximately two and a half hours after the jury retired, the judge met with Mr. Eckel, the Assistant District Attorney, and with Mr. Clark, Mr. Glakin, and Mr. Shields, three lawyers who had served as advisory counsel for appellants.[6] The following remarks were recorded:

> THE COURT: All right, there have been three questions involved. One of them was whether they [the jury] could get the charge in written form. And I've indicated to the jury that they cannot, but if there is any point of law which they wanted reread, that it would be available.
>
> The second questions pertained to making tests on certain of the materials, which I indicated was not within the prerogative of the jury.
>
> And the third question, which I am answering, really, is a matter of vocabulary. The jury wants to know what the term subterfuge and surreptitiously is. And I have given them the American Heritage Dictionary definition of those two terms.

N.T. March 6, 1981 at 77–78.[7] The record is unclear as to whether either the appellants or a public defender who represented the appellants were present at this time.

6. Advisory counsel contended that they had been discharged by the appellants before the jury began its deliberations. N.T. March 6, 1981 at 82.

7. In his opinion, the trial judge specified that the second question concerned whether the jury would be permitted to strike the midsec-

Pennsylvania Rule of Criminal Procedure 1119(c) provides in part that "[a]fter the jury has retired to consider its verdict, additional or correctional instructions may be given by the trial judge in the presence of all parties." However, in *Commonwealth v. Bradley*, 501 Pa. 25, 459 A.2d 733 (1983), the Supreme Court held that a violation of Rule 1119(c) is not reversible error in the absence of prejudice. There is no prejudice where it is clear beyond reasonable doubt that the trial court's ex parte communication had no impact on the jury's verdict. *See Commonwealth v. Elmore*, 508 Pa. 81, 494 A.2d 1050 (1985). We conclude that the supplemental jury instructions in the case *sub judice* did not contribute to appellants' convictions.

The jury's first two inquiries concerned matters which bore no direct relation to the question of appellants' guilt or innocence. The trial court properly denied the jury's unusual requests for an opportunity to perform tests on materials and for a copy of the entire jury charge. This denial did not interfere with the jury's ability to reach a verdict based on the evidence adduced at trial and on the legal instructions provided at trial. As for the inquiry concerning the meaning of the words "subterfuge" and "surreptitiously", those terms are included as an element of only one of the offenses for which appellants were charged—criminal trespass. 18 Pa.Cons.Stat.Ann. § 3503 (Purdon 1983). Since all of the appellants were acquitted of criminal trespass, none was prejudiced by the court's definition.

Finally, appellants urge us to presume the existence of prejudice where none is apparent since the trial court did not preserve the exact text of each of the jury's questions. As we previously indicated in our discussion of voir dire, an appellate court should be reluctant to reverse when the trial court record is sufficiently complete to allow for meaningful review. *See* II.B. *supra.* We find that the trial court's recorded summary of the jury's questions comprises a

tions of the General Electric missile components with hammers. Trial court op. at 47.

record of sufficient completeness for present purposes. *Cf.* *Commonwealth v. Lyons*, 346 Pa.Super. 585, 500 A.2d 102 (1985) (no automatic reversal despite absence of full voir dire transcript).

## V. RECUSAL AND SENTENCING [8]

Appellants' argue that the trial judge erred by repeatedly denying requests that he recuse at trial and by denying appellants' motion that he recuse at sentencing. In the Superior Court's previous en banc opinion, in which we overturned appellants' convictions and remanded for a new trial, we stated that "the new trial should not be conducted by the same judge, nor should he be involved in any further proceedings in this case." 325 Pa.Super. at 268, 472 A.2d at 1112. However, we specifically declined to reach the issue of whether the trial judge should have disqualified himself at any time in the past. *Id.* We now decide that the judge's denial of requests that he recuse at trial was not reversible error, but that the judge's refusal to recuse at sentencing was improper.

■■■■ A judge's decision to continue presiding over a jury trial will not be reversed in the absence of a clear abuse of discretion. *Reilly v. Southeastern Pa. Transp. Auth.*, 507 Pa. 204, 489 A.2d 1291 (1985). In order to establish an abuse of discretion, an appellant must show something more than bias in the abstract; he must ordinarily demonstrate that the alleged bias of the judge infected the jury or otherwise deprived him of a fair trial. *See* *Reilly*, 507 Pa. at 226–27, 489 A.2d at 1302; *Commonwealth v. Satzberg*, 358 Pa.Super. 39, 516 A.2d 758 (1986). The appellants here have not met this burden. Although appellants' brief refers to numerous instances of alleged judicial misconduct, nearly all of the incidents in question took place outside the presence of both the veniremen and

8. Issues 14 and 15 require no further discussion. *See* p. 153 *supra.* In this section, we deal with issues 16, 17, and 18.

the trial jury.[9] Moreover, although appellants earnestly contend that many of the judge's rulings during the course of the trial were motivated by bias, we have already determined that these rulings were not prejudicial error. We therefore conclude that all of appellants' allegations of trial error are without merit and that appellants' convictions must be affirmed.

■ Nevertheless, the fact that it is proper for a judge to preside at trial does not settle the question of whether it is proper for him to preside at sentencing. Since the judge is the sole finder of fact at the sentencing proceeding, any possible indication of judicial bias—even bias of which the jury was wholly unaware—must be carefully considered when a motion to recuse at sentencing is denied. *See Commonwealth v. Bryant*, 328 Pa.Super. 1, 476 A.2d 422 (1984). In *Commonwealth v. Darush*, the Supreme Court highlighted the distinction between review of a judge's failure to disqualify himself at trial and review of a judge's failure to disqualify himself at sentencing:

> [A]ppellant was tried by a jury which was responsible to evaluate the testimony and arrive at a verdict. Since appellant is unable to point out any partial rulings or conduct by the trial court which might have improperly affected the jury, he has not shown that the integrity of the fact finding process was affected by any alleged predisposition held by the court. *See Commonwealth v. Scott*, 469 Pa. 258, 365 A.2d 140 (1976).

However, considering all the circumstances, especially the trial court's inability to affirmatively admit or deny making remarks from which a significant minority of the lay community could reasonably question the court's impartiality, we feel the largely unfettered sentencing dis-

---

**9.** Appellants complain that the judge referred to appellants' infiltration of the General Electric plant as a "break-in" in front of four veniremen, that the judge admonished one defendant, "You, as a lawyer, should know how to cross-examine.", and that the judge cautioned another defendant while on the witness stand, "You have a tendency to ramble on." N.T. Feb. 25, 1981 at 557; March 3, 1981 at 32; March 5, 1981 at 49. These incidents could not have biased the jury.

cretion afforded a judge is better exercised by one without hint of animosity toward appellant. . . . [A] defendant is entitled to sentencing by a judge whose impartiality cannot reasonably be questioned. Consequently, a different trial judge must be assigned to resentence appellant. 501 Pa. 15, 23–24, 459 A.2d 727, 732 (1983) (footnote ommitted).

After carefully considering the record as a whole, we conclude that one might reasonably question the impartiality of the trial judge in this case and that resentencing is in order. The judge's comments both during and after trial indicate that he became emotionally involved in an acrimonious series of confrontations with the appellants. During the voir dire process, the judge was quoted in the New York Times as having told a reporter that "[i]n any case of civil disobedience, the prosecutor, the judge, and the jury are put on trial." N.T. Feb. 27, 1981 at 937. Throughout the trial, the judge and the appellants repeatedly accused one another of subverting justice, pandering to the press, and intentionally prejudicing jurors. *See Commonwealth v. Berrigan*, 325 Pa.Super. at 267–71, 472 A.2d at 1112–13. Moreover, between the time of the guilty verdict and the sentencing hearing, the judge revealed the intensity of his feelings in letters which he wrote to supporters of the appellants.[10] In one letter, responding to a request by a documentary film maker for an interview, the judge said:

. . . I feel that to make a documentary of such an insignificant situation will make heroes of immature and intransigent people, enhancing their status and importance.

To a professor who wrote to plead for leniency for appellants, the judge wrote:

[The defendants'] protestations of good motives and 'inner conscience' do not wash. Unfortunately, clerical positions and religious orientation and perhaps fear of one's ultimate salvation obscured from the defendants and those who blindly follow them, the obvious.

10. These letters were attached to a motion for recusal filed with the lower court and are part of the record.

. . . .

The law has learned from history that you deal in the past, present, and future from equality, not weakness. The hordes of Nazis would not have overrun Europe in World War II if there had been equality in armaments. Would Chamberlain's appeasement have ever stopped Hitler? Lift your head from the sand and see the world as it always is and always was!

To another person urging sympathy for appellants, the judge wrote:

It is part of [the defendants'] policy and tactics to delude people about their good intentions when their sole purpose is to have no master, no government, and really, no God.

The judge's remarks immediately prior to announcing appellants' terms of imprisonment also indicate that these sentences may have been unduly influenced by the judge's emotional reactions:

It is clear that [the defendants' supporters] have sometimes knee-jerk responses to the issues akin to those responses scientifically recorded by Pavlov.

Even their letters of support and advice show signs of vocabulary similarities, the same propaganda, and even some thought control. They assert their position with an arrogance to the system, an intolerance to others, and an innate immutability which has been reserved heretofore for proven profits.

. . . .

The receipt of mail from various states and various sectors of the community at various times points to and gives an uneasy sense of conspiracy and prompting by those herein involved. Such witch hunts and conspiracies have been condemned with respect to any individual in government, the majority, or in this case, any minority view espousing a particular cause.

N.T. July 28, 1981 at 73, 80. When a judge implies that he is the target of a "witch hunt" secretly organized by a defendant by means of "thought control", we think that

there is good reason for that judge to step aside before pronouncing sentence. *Cf. Commonwealth v. Knighton,* 490 Pa. 16, 415 A.2d 9 (1980) (resentencing ordered where judge indicated during sentencing hearing that he had been victimized by defendant).

Finally, as their last allegation of error, appellants contend that the trial judge imposed excessive sentences that were based on impermissible considerations. We find that these sentences were based in part on impermissible considerations. This is an additional reason why we must vacate the judgments of sentence.

 While a court is vested with wide discretion in sentencing, a sentence may be rendered invalid if it appears from the record that the court relied in whole or in part on an impermissible factor. *Commonwealth v. Bethea,* 474 Pa. 571, 379 A.2d 102 (1977); *Commonwealth v. Dugan,* 335 Pa.Super. 82, 483 A.2d 965 (1984); *Commonwealth v. Kostka,* 276 Pa.Super. 494, 419 A.2d 566 (1980). The court here appears to have taken into account factors which bear no relationship to "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant[s]." 42 Pa.Cons.Stat.Ann. § 9721(b) (Purdon 1982).

 First, the court considered appellants' political ideology and their long history of involvement in social protest movements as evidence of bad character. The court stated:

Their symbolic crying of "wolf" against the majority for at least two decades, and for various and sundry social issues, diffuses and discredits the sincerity which we are expected to accept. It seems incomprehensible that such a selected few have an inside tract as to the necessities for the salvation of society.

. . . .

I am likewise cognizant of the fact that the Reverend Daniel Berrigan, in violation of his bail, as far as I am concerned, went to Ireland, another sovereign country

outside the jurisdiction of the United States, in order to protest things that were not properly within his purview to protest.

Even as late as last week, in June or the first week in July, the Reverent Phillip Berrigan was seen in Washington and photographed in the papers to protest our association with the present regime in El Salvador.

While these protests may not have involved criminal charges—at least the most recent ones—they show an intransigence and a penchant for professional protest stations. These actions further show a desire to substitute their point of view for that of the majority, and it often conflicts with the majority view. Such actions only dilute their credibility and sincerity, and makes them look like chronic curmudgeons malcontents, and soothsayers of doom, that a free society not only allows, but also promotes because of our extensive media coverage which has been sought by them.

N.T. July 28, 1981 at 73–74, 76–77.

The record does not reveal whether any of the appellants actually violated a condition of bail. Bail violations are an appropriate factor to consider during sentencing. The judge could also have legitimately considered certain illegal acts of civil disobedience of which certain of the appellants had been convicted previously. Yet, given the tone of the judge's broad verbal attack, we conclude that appellants may also have been punished simply for having exercised their constitutional rights. We must guard against this possibility. Cf. *Commonwealth v. Bethea*, 474 Pa. at 580, 379 A.2d at 107 (resentencing ordered where "judge may have been influenced by fact that appellants chose to stand trial").

Second, the judge attributed to one appellant a serious act of misconduct of which there is no evidence in the presentencing reports or other portions of the trial record. The judge stated that "... one of the [defendants] called several jurors several times to hassle these jurors as to why they returned the verdict they did." N.T. July 28, 1981 at 78.

Appellant John Schuchart twice interrupted the judge to say that this statement was false. *Id.* at 78–79. The following exchange then occurred:

[Appellant] CARL KABOT: Would you name the one of us that had called a juror, please?

THE COURT: I don't have to, and I won't.

*Id.* at 79.

A judge may not rely on "unverified hearsay outside the record in imposing judgment of sentence." *Commonwealth v. Schwartz,* 267 Pa.Super. 170, 406 A.2d 573 (1979). *See also Commonwealth v. Sypin,* 341 Pa.Super. 506, 491 A.2d 1371 (1985). "[A]ny ex parte information received by a judge before sentencing should be disclosed to a defendant so that he may have an opportunity to examine it and dispute its accuracy." *Commonwealth v. Schwartz,* 275 Pa.Super. 112, 114, 418 A.2d 637, 638 (1980). Since the judge in the instant case apparently relied on an allegation of uncertain origin which the appellants had no real opportunity to contest, the judgments of sentence cannot stand.[11]

The trial judge imposed the following sentences:[12]

**11.** We also note two other disturbing features of the sentencing hearing.

First, the judge emphasized how his own political beliefs differed markedly from those of the appellants:

While no one wants nuclear holocaust, ex parte disarmament in any age is foolhardy and suicidal in the light of immediate past history. One has only to look at the Nazi invasion of Poland to see its ridiculousness.

N.T. July 28, 1981 at 75. This comment was surely not relevant to any proper sentencing concern.

In addition, the judge repeatedly referred to the activities of certain individuals who were allegedly supporters of the defendants. For example, he stated:

[A] member of the jury was spat upon by some of the followers because of the verdict rendered by him and his fellow jurors. Several jurors were called up by members of the press and harassed as to how their verdict was returned.

*Id.* at 78. In the absence of record evidence to the contrary, appellants cannot reasonably be held responsible for the acts of these third parties.

**12.** The court did not impose a separate sentence for the crime of criminal mischief.

| DEFENDANT | BURGLARY | CONSPIRACY |
|---|---|---|
| Philip Berrigan | 3–10 years | 10 yrs. consecutive probation |
| Daniel Berrigan | 3–10 years | 10 yrs. consecutive probation |
| Carl Kabat | 3–10 years | 10 yrs. consecutive probation |
| John Schuchart | 3–10 years | 10 yrs. consecutive probation |
| Dean Hammer | 1 1/2–5 yrs. | 5 yrs. consecutive probation |
| Elmer Maas | 1 1/2–5 yrs. | 5 yrs. consecutive probation |
| Molly Rush | 2–5 years | 5 yrs. consecutive probation |
| Ann Montgomery | 1 1/2–5 yrs. | 5 yrs. consecutive probation |

In conclusion, although we affirm appellants' convictions, we vacate these judgments of sentence on the grounds that the trial judge should have recused at sentencing, and because these sentences were based in part on impermissible considerations.

Judgments of sentence vacated. Case remanded for resentencing before a different judge. Jurisdiction is relinquished.

BROSKY, J., files a dissenting opinion.

TAMILIA, J., files a dissenting opinion in which CAVANAUGH and KELLY JJ., join.

KELLY, J., files a dissenting statement.

BROSKY, Judge, dissenting:

I must respectfully dissent from the excellent majority opinion authored by my colleague, Judge Beck. While I feel that the majority thoroughly and correctly resolves most of the issues remaining for our determination, I can-

not concur in the resolution of Issue (I) (D), pertaining to the trial court's denial of certain challenges for cause.

Appellants assert that the trial court erred in failing to excuse seven prospective jurors. Upon review of the record I find merit in appellants' argument as to one prospective juror.

It is well-settled law that a challenge for cause should be sustained in two types of situations: (1) where the juror indicates by his answers that he will not be an impartial juror; (2) where the juror has such a close relationship, familial, financial, or situational, with the parties, counsel, victims, or witnesses that the court will presume a likelihood of prejudice, irrespective of the answers given on voir dire. See *Commonwealth v. Maxwell*, 355 Pa.Super. 575, 585, 513 A.2d 1382, 1387 (1986); see also *Commonwealth v. Colson*, 507 Pa. 440, 454, 490 A.2d 811, 818 (1985).

Appellants have contended that three panel members possessed such close ties to the "victim", General Electric, that the trial court should have presumed them to be incapable of impartiality, under the second category. One of these three panel members was a stockholder in General Electric.

It has been held in the civil context that a stockholder is incompetent to serve as a juror in a case in which the corporation has an interest. See *Pennsylvania Power and Light Co. v. Gulf Oil Corp.*, 270 Pa.Super. 514, 535 n. 23, 411 A.2d 1203, 1214 n. 23 (1979), citing *Seeherman v. Wilkes–Barre Co.*, 255 Pa. 11, 14, 99 A. 174 (1916). Presumedly, it is the potential for an award in favor of, or against, the corporation in question, and the effect of that award on later shareholder dividends, that provides the "cause" for dismissal of a potential stockholder juror. However, I cannot find that the interest of the stockholder in the matter *sub judice* was too shadowy, remote, or contingent to provide a basis for presuming bias simply because the factual scenario has shifted to the criminal arena. Clearly, appellants have admitted that it was their intent to damage the bomb components in question, to bring

missile production at the King of Prussia plant to a grinding halt, and to impede the profit making activity of General Electric. I perceive no meaningful distinction between a potential juror threatened with diminished dividends in the event of an unfavorable civil verdict, and a potential juror who conceivably has already received diminished dividends as a result of the allegedly criminal behavior of the defendants before him. As such, despite the protests of the stockholder in question that any verdict in the matter *sub judice* would have a "minute" impact on her economic fortunes, I believe that the trial court should have presumed a likelihood of prejudice, irrespective of her assertions to the contrary. Appellants' challenge for cause was improperly denied.

As a result of the denial, appellants were forced to exhaust their peremptory challenges to eliminate a prospective juror who should have been excused for cause. This is reversible error, and a new trial should be granted for this reason. *Commonwealth v. Stamm*, 286 Pa.Super. 409, 429 A.2d 4, 7 (1981), citing *Commonwealth v. Jones*, 477 Pa. 164, 168, 383 A.2d 874, 876 (1978).

TAMILIA, Judge, dissenting:

I respectfully dissent. I fail to see how the majority can view the conduct of the trial court improper for sentencing purposes while not viewing the same conduct, which existed at the outset of trial, and during trial, to be prejudicial in arriving at a verdict, when the court's mental set and predilection, as outwardly manifested, were crucial to a fair trial. The majority would have it both ways in attempting to preserve the substance of the proceeding while disapproving of the disposition.

There is no safe course of conduct for a trial judge, particularly in a widely publicized trial, other than avoiding contact with the media and refraining from expressing, publicly or privately, his personal belief concerning the character of the appellants or their strategy in defending their case. The appearance of impartiality is as important

as actual adherence to the cardinal rule of impartiality by which every judge must abide.

The inconsistent and untenable approach by the majority is clearly evident in the majority Opinion at p. 171, which follows verbatim:

After carefully considering the record as a whole, we conclude that one might reasonably question the impartiality of the trial judge in this case and that resentencing is in order. The judge's comments both during and after trial indicate that he became emotionally involved in an acrimonious series of confrontations with the appellants. During the voir dire process, the judge was quoted in the New York times as having told a reporter that "[i]n any case of civil disobedience, the prosecutor, the judge, and the jury are put on trial." N.T. Feb. 27, 1981 at 937. Throughout the trial, the judge and the appellants repeatedly accused one another of subverting justice, pandering to the press, and intentionally prejudicing jurors. *See Commonwealth v. Berrigan*, 325 Pa.Super. at 267–71, 472 A.2d at 1112–13. Moreover, between the time of the guilty verdict and the sentencing hearing, the judge revealed the intensity of his feelings in letters which he wrote to supporters of the appellants. In one letter, responding to a request by a documentary film maker for an interview, the judge said:

... I feel that to make a documentary of such an insignificant situation will make heroes of immature and intransigent people, enhancing their status and importance.

Beck, J., p. 171 (footnotes omitted).

While the majority clearly spells out the deficiencies of the trial judge before and during trial, it would limit its correction only to sentencing. In effect, the majority holds it is proper for a judge to become emotionally involved, intemperate and to exhibit bias during a trial, but the only remedy for a possibly tainted result is to assure an impartial sentencing. This glaring contradiction is impermissible and we would be shirking our duty to permit the conduct at

a trial to stand when that same conduct requires us to vacate sentence and require a resentence by a new and impartial judge.

The irony of this case is that on all of the substantive issues, I believe the Commonwealth has prevailed. Yet, it was for an impartial jury to determine under the direction of at least an outwardly unbiased judge. I do not believe the appellants have established a defense that will stand scrutiny under the law. It is unfortunate the conduct of the trial judge is such that appellants can rightfully question their having received a fair trial. Unquestionably, this type of trial is excruciatingly difficult for all concerned and the key to its successful completion is a temperate judge who is able to remain above the affray and aloof from media and other considerations which might draw him into it. Unquestionably, the trial judge is an extremely competent and capable person; but in this instance, his involvement, as summarized by the majority above, requires a new trial.

I would vacate the sentence and remand for a new trial before a different judge.

CAVANAUGH and KELLY, JJ., join.

KELLY, Judge, dissenting statement:

I join Judge Tamilia's dissent. I would add to his analysis, briefly, as follows.

In *Uram v. American Steel and Wire Co.*, 379 Pa. 375, 108 A.2d 912 (1954), Justice Musmanno eloquently explained:

> Every judge, being human, can become angry, but every judge, being educated and conscientious, must know how to control his temper so that his wrath may not become the smoke of reason evaporating in the fires of personal controversy. Judicial equanimity is not so rare an article that it must be used parsimoniously during a trial. Particularly must a judge know how to bridle indignation and resentment in the presence of the jury because a jury is

only too ready to ride any steed of emotion which the judge startles, urges, or spurs into action.

The jury regards the judge as the epitome of wisdom, the apogee of forbearance, the ultimate in propriety and the zenith of impartiality. Any fulmination, therefore, from the bench which strikes at a party litigant, witness, or lawyer may easily be interpreted by the jury as the thunderbolt of aroused justice, and, from that moment, the target of the judge's Olympian rage can not expect an uninfluenced appraisement from the jury. Most often the display of ire from the bench has no bearing at all on the issue up for adjudication but the jury is not informed that they must ignore the high temper as they would ignore a high wind touching the roof of the courthouse.

* * * * * *

The spectacles through which the Judge sees a case are usually taken over by the jury when they come to view the entire litigation in the privacy of the jury deliberating room. It may be that the plaintiff was not in justice and law entitled to a verdict, but it is not apparent in the record that he was allowed a fair and full opportunity to demonstrate whether he was or not. What was said in *Commonwealth v. Myma,* 278 Pa. 505, 508, 123 A. 486, 487, may well be repeated here:

> The practice of a judge entering into the trial of a case as an advocate is emphatically disapproved. The judge occupies an exalted and dignified position; he is the one person to whom the jury, with rare exceptions, looks for guidance, and from whom the litigants expect absolute impartiality. An expression indicative of favor or condemnation is quickly reflected in the jury box and at the counsel table. To depart from the clear line of duty through questions, expressions, or conduct, contravenes the orderly administration of justice. It has a tendency to take from one of the parties the right to a fair and impartial trial, as guaranteed under our system of jurisprudence.

108 A.2d at 915, 220 (Musmanno, J., dissenting). I find these sentiments applicable to the instant case. I agree with Judge Tamilia's analysis and his conclusion that appellants were denied a fair trial and that this case should be remanded for a new trial before a different judge. I especially note my agreement with Judge Tamilia's observation that:

> The irony of this case is that on all of the substantive issues, I believe the Commonwealth has prevailed. Yet it was for an impartial jury to determine under the direction of at least an outwardly unbiased judge.

Dissent, *supra*, 369 Pa.Super. at 180, 535 A.2d at 109 (per Tamilia, J.). A more cogent expression of my precise sentiments I could not have hoped for.

Consequently, I respectfully dissent, and join the dissent by Judge TAMILIA.