J-S30028-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| DAVID M. KING | : | |
| Appellant | : | No. 1783 WDA 2019 |

Appeal from the PCRA Order Entered November 7, 2019
In the Court of Common Pleas of Cambria County Criminal Division at
No(s): CP-11-CR-0000233-2015

BEFORE: MURRAY, J., McLAUGHLIN, J., and STEVENS, P.J.E.*

MEMORANDUM BY McLAUGHLIN, J.: FILED OCTOBER 07, 2020

David M. King appeals the denial of his request for relief under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. King asserts that his trial counsel was ineffective and that the sentencing court made several errors. We affirm the denial of King's ineffectiveness claims on the basis of the PCRA court's opinion. See PCRA Ct. Op., filed Nov. 7, 2019. We conclude that King's claims regarding sentencing court error are waived.

This case stems from King's repeated sexual abuse of his minor son over a period of approximately ten years. In February 2017, a jury found King guilty of multiple counts of Involuntary Deviate Sexual Intercourse with a Child, Involuntary Deviate Sexual Intercourse-Person Less Than 16 Years, Indecent

_____

* Former Justice specially assigned to the Superior Court.

Assault of a Person Less Than 13 Years of Age, Indecent Assault of a Person Less than 16 Years of Age, and Endangering the Welfare of Children.[1] The trial court imposed an aggregate sentence of 55 to 110 years' incarceration. We affirmed the judgment of sentence, and our Supreme Court denied King's petition for allowance of appeal. See Commonwealth v. King, No. 789 WDA 2017, 2018 WL 1631584 (Pa.Super. filed April 5, 2018) (unpublished memorandum), appeal denied, 190 A.3d 687 (Table) (Pa. filed Oct. 11, 2018).

King filed a timely, pro se PCRA petition in May 2019 and court-appointed counsel filed the instant amended petition in August 2019. The PCRA court held a hearing, after which it denied the petition. King filed the instant timely appeal and complied with Pa.R.A.P. 1925(b). The PCRA court filed a responsive Pa.R.A.P. 1925(a) opinion, which incorporated the reasoning set forth in its November 7, 2019 opinion in support of the order denying King's PCRA petition.

On appeal, King raises the following issues:

> 1. Whether trial counsel provided ineffective assistance of counsel relative to [King's] constitutional right to a speedy trial pursuant to Pa.R.Crim.P. 600?
>
> 2. Whether trial counsel provided ineffective assistance of counsel for failure to object to three instances of prosecutorial misconduct?
>
> 3. Whether trial counsel was ineffective in failing to present expert testimony to challenge the findings of Commonwealth's expert witness, Dr. Kupchella, and was

_____

[1] 18 Pa.C.S.A. §§ 3123(b) & (a)(7), 3126(a)(7) & (8), and 4304(a), respectively.

- 2 -

ineffective in failure to properly cross-examine the expert witness?

4. Whether trial counsel was ineffective in failing to present testimony to refute the testimony of two "jailhouse informants," and failing to cross-examine said witnesses regarding any tacit agreement with the Commonwealth and prior crimin [sic] falsi convictions?

5. Whether trial counsel was ineffective in failing to request a "prompt complaint" jury instruction?

6. Whether trial counsel provided ineffective assistance for failure to challenge lack of jurisdiction and/or venue in Cambria County for acts that allegedly occurred in Clearfield or Indiana County, and by failing to consult his client regarding this issue?

7. Whether the Sentencing Court abused its discretion during sentencing hearing by allowing evidence by unrelated alleged victims and prior bad acts?

8. Whether the Sentencing Court failed to provide adequate reasoning on the record for the sentence imposed?

9. Whether [King] was subjected to two unconstitutional 25-year minimum mandatory sentences pursuant to 42 Pa.C.S. § 9718.2(a)(1)?

10. Whether trial counsel provided ineffective assistance by failing to obtain records and develop testimony and argument at trial relative to prior Children and Youth "unfounded" investigations?

11. Whether trial counsel provided ineffective assistance by failing to subpoena Alicia Jolley, [King's] former live-in girlfriend to testify at trial?

12. Whether trial counsel provided ineffective assistance for failing to renew his motion in limine at time of trial to preclude the testimony of Virginia Stuller, who provided highly prejudicial testimony to the jury?

13. Whether trial counsel provided ineffective assistance by failing to interview and provide trial testimony from "Rusty" (Last name unknown) an individual who provided family

> counseling services and would have testified to [JK's] manipulative behavior?

King's Br. at 2-3.

When reviewing the denial of PCRA relief, we consider whether "the determination of the PCRA court is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." Commonwealth v. Larkin, --- A.3d ---, 2020 WL 3869710, at *4 (Pa.Super. July 9, 2020) (en banc) (citation omitted).

King claims that the PCRA court erred in denying his multitude of ineffectiveness claims. He argues that his trial counsel was ineffective because he failed to pursue properly a Pa.R.Crim.P. 600 claim; object to prosecutorial misconduct; counter the testimony of the Commonwealth's medical expert; refute the testimony of two "jailhouse informants"; request a "prompt complaint" jury instruction; challenge jurisdiction and venue in Cambria County; present records of King's "unfounded" Children and Youth Investigations; subpoena King's former live-in girlfriend; attempt to preclude the highly prejudicial testimony of former girlfriend Virginia Stuller; and procure the testimony of family counselor "Rusty."

We presume counsel was effective and a petitioner bears the burden of proving otherwise. See Commonwealth v. Brown, 161 A.3d 960, 965 (Pa.Super. 2017). A petitioner may overcome the presumption by pleading and proving all of the following: "(1) the underlying legal claim has arguable

merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice because of counsel's ineffectiveness." Commonwealth v. Paddy, 15 A.3d 431, 442 (Pa. 2011). A petitioner's failure to prove any one of these factors defeats the ineffectiveness claim. See Commonwealth v. Dennis, 950 A.2d 945, 954 (Pa. 2008).

The PCRA court denied all of King's ineffectiveness claims. First, the court aptly concluded that King's claim regarding his Pa.R.Crim.P. 600 issue was not eligible for relief because this Court had already concluded that the issue had no underlying merit on direct appeal and therefore counsel could not be deemed ineffective for failure to pursue the claim. See 42 Pa.C.S.A. § 9543(a)(3) (requiring petitioners to prove that allegations of error have not been previously litigated or waived, in order to be eligible for relief under the PCRA); PCRA Ct. Op. at 6-7. Likewise, the court explained that King's claim regarding counsel's failure to renew his objection to Virginia Stuller's testimony at trial also warranted no relief because this Court concluded, on direct appeal, that the underlying claim had no merit. Id. at 25-26.

The PCRA court next found that trial counsel had a reasonable basis for not requesting a curative instruction after the Commonwealth asked King about his sexual orientation. Id. at 7. Further, the court determined that trial counsel was not ineffective for failing to object to the prosecutor's comments during closing referring to Bill Cosby, using the term "monster," and using an example to explain the reasonable doubt standard. The court concluded that

the prosecutor's comments were in response to defense counsel's remarks and were permissible "oratorical flair." Id. at 8-10.

The PCRA court further concluded that trial counsel had a reasonable basis for not presenting evidence to rebut the prosecution's expert medical testimony because counsel had been previously successful in precluding the expert from issuing a conclusion that the victim's medical injury was due to sexual abuse and counsel was seeking to avoid "opening the door" to that conclusion. Id. at 10-11. Likewise, the court found that trial counsel had a reasonable basis for not presenting evidence of "unfounded" Children and Youth investigations where the introduction of the evidence could "open the door" to the admission of damaging information about King. Id. at 24-25.

The PCRA court also determined that King's claim that trial counsel was ineffective for allegedly failing to cross-examine properly two "jailhouse" informants lacked merit because counsel adequately questioned the informants regarding their motives and past convictions. Id. at 11-13. In addition, the court found that trial counsel was not ineffective for failing to seek a prompt complaint jury instruction. The court explained that the victim reported King's conduct when he was 16 and he alleged that the abuse had spanned a ten-year period ending at the time he reported the abuse. Id. at 13-14

The PCRA court also properly concluded that trial counsel was not ineffective for failure to challenge jurisdiction or venue in Cambria County. The court stated, "[T]he record is clear that [trial counsel] not only conferred

with [King] relative to the jurisdiction issue, but, consistent with his extensive criminal defense experience . . . had an objective[ly] reasonable basis for not pursuing a transfer. . . ." Id. at 16-17. Lastly, the court found King's claim that trial counsel was ineffective for failing to procure the testimony of Alicia Jolly or someone King identified merely as "Rusty" was devoid of merit because counsel made diligent, albeit unsuccessful, efforts to locate both individuals. Id. at 25; 27-28.

King also maintains that the sentencing court erred by allowing King's family members to testify regarding King's prior "bad acts" and by failing to provide adequate reasons for King's sentence on the record. King waived these claims because he could have raised them on direct appeal, but failed to do so.[2] See 42 Pa.C.S.A. § 9544(b) ("[A]n issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding"). Nor is King's assertion that the sentencing court fashioned an illegal sentence due to the application of Alleyne v. United States, 570 U.S. 99 (2013), a basis for relief under the PCRA. King previously litigated that issue on direct appeal. See 42 Pa.C.S.A. § 9543(a)(3); PCRA Ct. Op. at 24.

After a review of the parties' briefs, the certified record, and the relevant law, we find no abuse of discretion or error in the PCRA court's ruling. We thus affirm the denial of King's ineffectiveness claims on the basis of the well-

_____

[2] We may affirm an order on any basis. See Commonwealth v. Clouser, 998 A.2d 656, 661 n.3 (Pa.Super. 2010).

reasoned opinion of the Honorable David J. Tulowitzki. See PCRA Ct. Op. at 4-29. Further, we conclude that King's issues regarding sentencing court error are waived.

Order affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/7/2020

# IN THE COURT OF COMMON PLEAS OF CAMBRIA COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

COMMONWEALTH OF      *
PENNSYLVANIA,      *
     *     *233-15*
v.      *     No. ~~223-2015~~
     *
DAVID M. KING,      *
     *
     Defendant.      *

## OPINION

Before the Court is defendant's August 14, 2019 Amended Petition Pursuant to the Post-Conviction Relief Act (PCRA). Said Petition was filed by court-appointed PCRA counsel following defendant's *pro se* filing of May 24, 2019. Hearing was held on September 25, 2019. In his Petition, defendant ascribes error in three regards, namely: ineffective assistance of trial counsel, error by the Sentencing Court, and additional claims. Additionally, at the September 25th hearing, defendant orally presented further grounds for relief.

By way of background, we note that Attorney Timothy Burns represented defendant at jury trial on February 6 and 7, 2017. At the conclusion thereof, the jury convicted defendant of 54 of 58 sexual crimes perpetrated against his biological son over a 10-year period; namely, all of the following:

- **Counts 3-18:** involuntary deviate sexual intercourse with a child;

- **Counts 19- 26:** involuntary deviate sexual intercourse – person less than 16 years;

- **Counts 29-50:** indecent assault; and

- **Counts 51-58:** endangering welfare of child.



FILED FOR RECORD 2019 NOV -7 A 10: 05 CLERK OF COURTS CAMBRIA COUNTY

269

On May 1, 2017, after a brief hearing to determine defendant's sexually violent predator status,[1] the Court sentenced defendant as follows:

- **Relative to Count 21, involuntary deviate sexual intercourse – person less than 16 years:** State incarceration of not less than 25 years, nor more than 50 years;

- **Relative to Count 22, involuntary deviate sexual intercourse – person less than 16 years:** State incarceration of not less than 25 years, nor more than 50 years, consecutive to Count 21;

- **Relative to Count 18, involuntary deviate sexual intercourse with a child:** State incarceration of not less than 5 years, nor more than 10 years, consecutive to Counts 21 and 22;

- **Relative to Count 23, involuntary deviate sexual intercourse – person less than 16 years:** State incarceration of not less than 25 years, nor more than 50 years, concurrent with the previous Counts;

- **Relative to Count 24, involuntary deviate sexual intercourse – person less than 16 years:** State incarceration of not less than 25 years, nor more than 50 years, concurrent with the previous Counts;

- **Relative to Count 25, involuntary deviate sexual intercourse – person less than 16 years:** State incarceration of not less than 25 years, nor more than 50 years, concurrent with the previous Counts;

- **Relative to Count 26, involuntary deviate sexual intercourse – person less than 16 years:** State incarceration of not less than 25 years, nor more than 50 years, concurrent with the previous Counts;

---

[1] At hearing, the Commonwealth represented to the Court that the report of the Pennsylvania Sexual Offenders Assessment Board (SOAB) indicated that defendant met the criteria to be classified as a sexually violent predator. However, rather than continue sentencing for defendant to obtain his own expert opinion, the Commonwealth, at the victims' request, chose to not proffer the SOAB report, accept a non-SVP/lifetime registration classification, and proceed with the May 1, 2017 sentencing.

2

- **Relative to Counts 3-16, involuntary deviate sexual intercourse with a child:** State incarceration of not less than 7 years, nor more than 14 years, concurrent with the previous Counts;

- **Relative to Count 17, involuntary deviate sexual intercourse with a child:** State incarceration of not less than 5 years, nor more than 10 years, concurrent with the previous Counts;

- **Relative to Count 19, involuntary deviate sexual intercourse – person less than 16 years:** State incarceration of not less than 5 years, nor more than 10 years, concurrent with the previous Counts; and

- **Relative to Count 20, involuntary deviate sexual intercourse – person less than 16 years:** State incarceration of not less than 5 years, nor more than 10 years, concurrent with the previous Counts.

Overall, defendant received a sentence of 55 years to 110 years of state incarceration. Additionally, relative to aforesaid counts, the Court ordered defendant to pay the costs of prosecution, awarded defendant credit for time served, determined that defendant was ineligible for the Recidivism Risk Reduction Incentive (R.R.R.I.), and required defendant to complete sex offender treatment upon release. Relative to Counts 29-32, 33-42, 43-50, and 51-58, the Court declined to sentence, as we deemed said Counts to have merged with the involuntary deviate sexual intercourse crimes, as asserted in defense counsel's April 24, 2017 "Pre-Sentence Memorandum."

Following sentencing, trial counsel timely filed post-sentence motions, as well as a timely direct appeal. The Superior Court affirmed the trial court via memorandum opinion of April 5, 2018 at No. 789 WDA 2017. Trial counsel sought review in the Supreme Court of Pennsylvania but the Petition for Allowance of Appeal filed on April 26, 2018 was denied on

3

October 11, 2018 at No. 182 WAL 2018. Thereafter, the Application for Reconsideration was denied on December 11, 2018.

Section 9543 of the Post-Conviction Relief Act addresses eligibility for relief, and defendant relies upon the following provisions:

**(a) General rule.**--To be eligible for relief under this subchapter, the petitioner must plead and prove by a preponderance of the evidence all of the following:

(1) That the petitioner has been convicted of a crime under the laws of this Commonwealth and is at the time relief is granted:
    (i) currently serving a sentence of imprisonment, probation or parole for the crime;

[. . .]

(2) That the conviction or sentence resulted from one or more of the following:
    (i) A violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.
    (ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

[. . .]

    (vii) The imposition of a sentence greater than the lawful maximum.
    (viii) A proceeding in a tribunal without jurisdiction.

(3) That the allegation of error has not been previously litigated or waived.

(4) That the failure to litigate the issue prior to or during trial, during unitary review or on direct appeal could not have been the result of any rational, strategic or tactical decision by counsel.

42 Pa.C.S.A. § 9543.

In his PCRA Petition, defendant initially raises the ineffective assistance of trial counsel in six regards, which we will address *seriatim*. As to all six claims, we note that a PCRA petition based upon ineffective assistance of counsel will be granted only upon proof, by a preponderance of the evidence, that the conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so

4

undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner. *Com. v. Dennis,* 597 Pa. 159, 950 A.2d 945, 954 (2008). To obtain relief, a petitioner must demonstrate that counsel's performance was deficient and that the deficiency prejudiced the petitioner. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A petitioner establishes prejudice when he demonstrates "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052; *see also Com. v. Mallory,* 596 Pa. 172, 941 A.2d 686, 702–04 (2008), *cert. denied,* —— U.S. ——, 129 S.Ct. 257, 172 L.Ed.2d 146 (2008) ("result of the proceeding" is stage of proceeding at which error occurred). Applying the *Strickland* performance and prejudice test, our Supreme Court has noted that a properly pled claim of ineffectiveness posits that: (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice befell the petitioner from counsel's act or omission. *Com. v. Tedford,* 598 Pa. 639, 960 A.2d 1, 12 (2008) (citing *Com. v. Pierce,* 515 Pa. 153, 527 A.2d 973, 975 (1987) (adopting U.S. Supreme Court's holding in *Strickland* )).

Defendant first contends that Attorney Burns was ineffective for failing to preserve his constitutional right to a speedy trial. Procedurally, defendant had been incarcerated since December 29, 2014. After a jury was selected, the Commonwealth filed an interlocutory appeal relative to the trial court's October 14, 2015 ruling denying the Commonwealth's request for inclusion of a medical report that was authored on the eve of trial. During the pendency of the interlocutory appeal, trial counsel filed a Rule 600 Motion on October 30, 2015, and nominal bond was granted on November 30, 2015. Said bond was revoked on April 1, 2016; however, on May 2, 2016, a second nominal bond with stringent home plan

5

conditions to ensure community safety, was granted. Trial counsel filed a second Rule 600 Motion on December 20, 2016 as part of Pre-Trial Motions, therein requesting a dismissal of all charges. We denied same via Order of December 27, 2016, given that upon receipt of the Superior Court's December 13, 2016 decision affirming our preclusion of the Commonwealth's medical report, we promptly scheduled defendant's case for the next available jury selection date, February 2, 2017.

In his direct appeal to the Superior Court, defendant raised the Rule 600 speedy trial issue, contending that the 419-day period that the his case was pending before the Superior Court due to the Commonwealth's meritless interlocutory appeal should be held against the Commonwealth. The Superior Court found this contention to be without merit. However, defendant again asserts a Rule 600 contention, specifically alleging that trial counsel should have objected to two Commonwealth continuances sought during the interlocutory appeal relative to the briefing schedule, as same extended his period of incarceration for an aggregate 120 days.

Despite defendant's assertion as to the novelty of this issue, a review of the Superior Court record reveals that this contention has already been reviewed as part of defendant's overall argument. Specifically, the Court observed that "[i]n support of his claim, King first notes the fact that 120 days within this 419-day period was caused by the Commonwealth twice requesting an extension of time in which to file its brief and reproduced record." *Com. v. King*, 789 WDA 2017, 2018 WL 1631584, *6 (PA. Super. 2018). Moreover, the Court cites to pages 28 through 29 of King's Brief as the source of this argument. Thus, we feel that defendant's argument has not only been previously litigated, but also lacks merit, as Attorney Burns clearly pursued argument on this ground at the appellate level. Additionally, at the PCRA hearing, Attorney Burns testified that he did not voice objection to the continuance requests, given that defendant was not prejudiced, as he was out on bond. Further, Attorney

6

Burns indicated reliance upon case law that failing to object to a continuance request at the appellate level does not equate with consent thereto. Finally, Attorney Burns testified that he pursued defendant's Rule 600 issue on appeal; however, the Superior Court ruled against him. For all of these reasons, defendant's Rule 600 argument must fail.

As his second allegation of ineffective assistance of counsel, defendant asserts that Attorney Burns should have objected and/or requested a curative instruction relative to three instances of prosecutorial misconduct. First, the Assistant District Attorney asked defendant on cross-examination, "[a]nd do you consider yourself a straight man? Are you a straight man? What is your sexual orientation?" N.T. 2/7/17, p. 32. Defendant acknowledges that although Attorney Burns objected to the questioning, which was sustained by the Court (*Id.*), Attorney Burns should have asked that the question be stricken, and that a curative instruction be given to the jury.

At the PCRA hearing, Attorney Burns explained that "sex cases" typically involve one person's word against another's, and that throughout the trial, he avoided "opening many doors" in an effort to prevent testimony harmful to defendant from being presented to the jury. Attorney Burns believed that after he objected, it was best to move on, and not rehash the issue to the jury, especially as Cambria County tends to be a conservative county.

We see nothing objectionable as to this trial strategy. This is especially true when considered with the rationale for Attorney Burns' objection, stated to the Court at sidebar as follows:

> . . . I don't feel being gay makes you a pedophile. I think that's what the Commonwealth is getting at, that he's bisexual and would have some propensity towards his son. I feel it is highly prejudicial, nor is it relevant.

*Id.* Thus, we find no error relative to Attorney Burns' action relative to the prosecutor's questioning.

7

As his second allegation of error relative to prosecutorial misconduct, defendant believes that Attorney Burns should have objected when the prosecutor stated the following during her closing argument:

> And we may have heard about or learned about Mr. Huxtable on the television show, but we all know what happened to Bill Cosby in life. There is no ideal dad, and this is more than being a disciplinarian. And if anyone in this courtroom is making him out to be a monster, it's not me. It's his own actions.

N.T. 2/7/17 at p. 48. Specifically, defendant contends that the prosecutor took advantage of a highly-publicized Pennsylvania case involving a well-known actor, whose case had nothing to do with defendant's.

At the PCRA hearing, Attorney Burns testified that although he did not like the prosecutor's commentary, he did not believe it objectionable, as appellate courts afford the Commonwealth great leeway relative to closing arguments. Additionally, Attorney Burns indicated that his closing argument was the first to reference Bill Cosby, in that he was trying to tell the jury that while defendant may not be perfect, like the stereotypical fathers on television, he had custody of his child. In fact, the record reveals the following remarks by Attorney Burns:

> Now, the most important thing, I think the most important witness, is my client, Mr. King, the monster that the DA, the district attorney, is making him out to be. As I said, there are pictures. One the prosecution has made, but I have my picture, and my picture is of a struggling single father. He had custody by consent of the child's mother since this boy was an infant up until these charges happened.
>
> I'm not going to sit here, or stand here rather, and tell you that Mr. King, Mr. David King, is a perfect dad, that he's a Cliff Huxtable or a Mr. Cleaver as we grew up watching TV. He's not. He's not a perfect person, and I won't stand here and insult your intelligence and say he is.

N.T. 2/7/17, p. 45. Attorney Burns then argued to the jury that just because defendant "has an attitude," has "moved around," has "lived in section eight," and "had a couple of girlfriends," these facts do not make him a monster, as he also encouraged his son to take part in activities

8

such as wrestling, football, and chess club, and made him do homework and chores. N.T. 2/7/17, p.p. 45-46.

Pennsylvania jurisprudence is supportive of a prosecutor's ability to utilize certain oratorical flair during closing argument to a jury. *See Com. v. Clancy*, 192 A.3d 44 (Pa. 2018) (prosecutor's classification of defendant as a "cold blooded killer" was permissible oratorical flair). In the matter *sub judice*, a review of the aforesaid transcript passages clearly reveals that once trial counsel referenced Cliff Huxtable, the assistant district attorney simply followed suit, and presented jurors with an alternative picture of Mr. Huxtable/Bill Cosby. Further, we see no error relative to trial counsel's argument to the jury, as counsel was simply trying to convince the jury that despite his transgressions, the defendant was trying to be the best father that he could be. Thus, because trial counsel initiated discussion as to Mr. Huxtable in a manor favorable to his client, and because the prosecutor responded with appropriate flair, defendant's claim for relief in this regard must fail.

As his third assertion of prosecutorial misconduct, defendant contends that the prosecutor inappropriately instructed the jury as to the legal standard of reasonable doubt by likening doubt to having to assess traffic before crossing the street. Defendant ascribes error to trial counsel for failing to object to this characterization, and for failing to request a curative instruction.

At the PCRA hearing, Attorney Burns testified that Cambria County Assistant District Attorneys routinely explain reasonable doubt to a jury by discussing an assessment of a traffic roadway when attempting to cross a street. In his experience, he has never seen an objection sustained as to this characterization. Moreover, he indicated that in closing instructions, the Court advised the jury as to the standard of reasonable doubt, which takes precedence over any attorney explanation.

9

The record reveals that we charged the jury at length relative to the concept of reasonable doubt, pursuant to the standard jury instructions. N.T. 2/7/17, p.p. 77-78. Additionally, we instructed jurors that the arguments of counsel are not evidence, and that the jurors are free to disregard the arguments of counsel. N.T. 2/7/17, p. 80. We also informed the jurors of their responsibility to judge the evidence in accordance with the Court's instructions. *Id.* In light of these instructions, combined with Attorney Burns' PCRA testimony relative to the commonality of the example utilized by the local prosecutors and the lack of exception typically thereto, we cannot find that Attorney Burns erred by failing to voice objection. Accordingly, all claims of error relative to ineffectiveness as to prosecutorial conduct must fail.

Defendant next contends that Attorney Burns was ineffective in not presenting expert testimony to challenge the findings of the Commonwealth's expert witness, Dr. Regina Kupchella, and was ineffective in failing to properly cross-examine the witness. Specifically, at trial, Dr. Kupchella testified as to her physical findings following physical examination of the victim, which included her observation of a scar in the victim's anus. Defendant asserts that Attorney Burns should have cross-examined the doctor relative to the actual size of the scar, and should have presented a defense expert to provide an alternative explanation for the scar.

At the PCRA hearing, Attorney Burns again explained that a classic "sex case" involves a question of credibility. He testified that Dr. Kupchella did not have a conclusion in her report relative to the cause of the scar, and in fact, he filed a Pre-Trial Motion in Limine to limit her trial testimony to the four corners of her report, and to prevent her from concluding at trial that the scar was attributable to sexual abuse. Attorney Burns believed that to call an expert witness to rebut a conclusion-less report would be counterproductive. Further,

10

Attorney Burns did not find Dr. Kupchella's testimony compelling, as she only opined that the boy had a scar.

We find Attorney Burns' trial strategy to be prudent. This is especially true as we granted his Motion in Limine relative to precluding the Commonwealth from offering a supplemental report from Dr. Kupchella, authored on the eve of trial, in an effort to prove the cause of the scar. In fact, this ruling prompted the above-discussed interlocutory appeal by the Commonwealth; however, the Pennsylvania Superior Court ultimately affirmed our ruling. To have called a defense expert would have undermined the favorable pre-trial ruling, and opened the door to the Commonwealth suggesting that the scar was caused by the criminal conduct perpetrated by defendant. Thus, defendant's allegation of ineffective assistance by Attorney Burns is without merit.

As his fourth claim of ineffectiveness, defendant asserts that Attorney Burns failed to present testimony to refute the testimony of two "jailhouse informants," and failed to cross-examine said witnesses relative to any tacit agreement with the Commonwealth, and as to prior *crimen falsi* convictions. At trial, the Commonwealth presented testimony from Lance Alfano and Justin Hickox, two individuals who spent time with defendant while all were incarcerated at Cambria County Prison. Defendant also alleges that trial counsel failed to investigate other inmates who were willing to refute the statements of Alfano and Hickox.

At the PCRA hearing, Attorney Burns outlined the names of numerous prison inmates that he tried to contact at the defendant's request. Additionally, at the defendant's instruction, he interviewed several persons at the Cambria County Prison on at least two occasions. However, several persons expressed disdain for defendant and blatantly refused to testify. Attorney Burns also specified a list of persons whom he subpoenaed to testify at trial; however, many had been released from prison, and failed to appear. As for investigating the *crimen falsi* convictions of Alfano and Hickox, Attorney Burns responded that he was "sure

11

he did." Likewise, he did not believe that Alfano or Hickox had been offered any deals by the Commonwealth.

A review of the trial transcripts reveals that Lance Alfano testified for the Commonwealth on February 6, 2017. N.T. 2/6/17, p.p. 94-100. During direct examination, the prosecutor questioned him as to whether he was given a benefit in exchange for testifying for the Commonwealth, and he responded "[n]o." N.T. 2/6/17, p. 96. Likewise, the prosecutor asked whether he had any pending cases in Cambria County, and he also answered "[n]o." *Id.* Immediately thereafter, the prosecutor inquired at length as to various *crimen falsi* convictions, including theft, bad checks, and burglary, and Alfano responded that he had a robbery conviction in 2009, and may possibly have a burglary conviction. *Id.* On cross-examination, Attorney Burns asked additional questions relative to Alfano's robbery conviction. *Id.* at p.p. 97-98. Attorney Burns also confirmed that Alfano was not receiving any benefit from the Commonwealth in exchange for his testimony. *Id.*

As to Justin Hickox, the record reveals that he testified for the Commonwealth on February 7, 2017. N.T. 2/7/17, p.p. 5-12. Similarly, the prosecutor questioned Hickox relative to *crimen falsi* convictions, including theft and bad checks, and Hickox answered affirmatively that he had multiple theft offenses, spanning from 2008 to 2014. *Id.* at p.6. Additionally, the prosecutor asked whether Hickox was receiving any benefit for his testimony, and whether he currently had any cases pending in Cambria County. *Id.* at p. 9. Like Alfano, Hickox also responded that he was not, and did not. *Id.* On cross-examination, Attorney Burns confirmed that Hickox was not receiving any favorable treatment from the Commonwealth in exchange for his testimony. *Id.* at p. 11.

Given that both the Commonwealth and Attorney Burns fully interrogated Alfano and Hickox as to their *crimen falsi* convictions, we believe that defendant's issue lacks merit. In fact, defendant even acknowledged at the PCRA hearing that Attorney Burns was the one who

12

forwarded Alfano's and Hickox's criminal records to him. Additionally, Attorney Burns testified that he relied on the fact that both witnesses were questioned by the Commonwealth as to their *crimen falsi* convictions, and fully admitted same. He also mentioned that should he have felt the need to probe further relative to the truthfulness of both witnesses' other testimony, he was prepared to do so. Thus, the record is clear that Attorney Burns fully obtained and explored the *crimen falsi* convictions, and that the Commonwealth also enlightened the jury as to said information. Likewise, both Attorney Burns and the Commonwealth confirmed for the jury that neither Alfano nor Hickox was being rewarded for their trial testimony. Accordingly, defendant's allegation of error must fail.

Finally, although defendant criticizes Attorney Burns' efforts relative to interviewing witnesses, we find his PCRA testimony credible relative to his investigative efforts. Attorney Burns kept diligent records, and detailed the names of several persons that he tried to converse with on defendant's behalf. As he outlined, numerous persons could either not be located, or indicated an unwillingness to testify. At defendant's request, Attorney Burns even subpoenaed several persons for trial; however, they failed to appear. Overall, the lack of cooperation by defendant's hopeful witnesses does not translate into error by Attorney Burns.

As his fifth claim of ineffective assistance of counsel, defendant asserts that Attorney Burns should have submitted a proposed jury instruction relative to the failure of the victim to make a prompt complaint, in accordance with Pennsylvania Suggested Standard Criminal Jury Instruction 4.13A. Specifically, defendant contends that because the abuse allegedly began when the victim was age 7, but because he did not disclose to a school guidance counselor until age 16, the jury should have been instructed to take this factor into consideration when assessing the victim's credibility.

13

At the PCRA hearing, Attorney Burns testified that he did not request a prompt complaint charge, as the abuse was on-going in nature, spanning almost a ten-year period. Thus, he did not believe said charge was applicable.

The victim's testimony at trial confirms Attorney Burns' position that the purported sexual abuse occurred when he was ages 7 through 16. N.T. 2/6/17, p.p. 32 and 61. Additionally, the record is very clear that on numerous occasions during cross-examination, Attorney Burns questioned the victim as to why he waited to come forward with allegations of abuse, and that his questioning was designed to raise a credibility issue with the jury. *See i.e.*, N.T. 2/6/17 p.p. 78, 79, 87, 90. Thus, we find no error in Attorney Burns' trial strategy in failing to request a prompt complaint charge at trial.

As his final allegation of ineffective assistance, defendant argues that Attorney Burns should have raised a jurisdictional challenge relative to the prosecution in Cambria County of crimes that allegedly occurred in Clearfield or Indiana Counties. At the conclusion of the September 25, 2019 PCRA hearing, we requested counsel to brief this issue, and a briefing scheduled was established. Having received the timely briefs of counsel, this issue is ripe for disposition.

Defendant notes that at the beginning of the jury trial, the Assistant District Attorney presented Commonwealth's Exhibit 2, stating:

> What that is, Your Honor, is a letter from Clearfield County from the Clearfield county District Attorney's office that is allowing the Commonwealth to prosecute the cases for not only the things that happened here in Cambria County, but also those things that happened between the defendant and the victim in Clearfield County as well.

N.T. 2/6/17, p. 24, and 2/6/17 Com. Ex. 2. Said Exhibit was admitted without objection by Attorney Burns. Defendant now contends that Attorney Burns failed to consult with him relative to waiving jurisdiction or venue. Defendant also asserts that Attorney Burns should have better investigated whether the alleged acts actually occurred in Clearfield County, as

14

opposed to Indiana County, as Ms. Stuller never testified as to the address, dates, or even years, that she, defendant, and the victim lived at her mother's home in Glen Campbell, i.e., the alleged location of the various Clearfield County crimes, and that online records reveal that Glen Campbell is located in Indiana County, Pennsylvania, 31 miles from Clearfield County.

As to the location of the Stuller residence, the argument proffered in defendant's brief is not only misleading, but blatantly incorrect. While it is true that online resources establish that the town of Glen Campbell is 31 miles from the town of Clearfield, this certainly is not the distance between Glen Campbell and the much closer Clearfield County line. Further, at trial, the then 19-year old adult victim unequivocally testified that Ms. Stuller's Glen Campbell residence is in fact located in Clearfield County, thus constituting sufficient evidence of record. N.T. 2/6/17, p. 28. Cambria County District Attorney Detective Lia DeMarco also testified at trial that her office received permission from the Clearfield County District Attorney's office to handle the Clearfield County charges. N.T. 2/6/17, p. 158. Moreover, defendant himself confirmed at the September 25, 2019 PCRA hearing that in 2004, when the victim was age 7, defendant resided with him in ". . . Glen Campbell **in Clearfield County, which was one mile from the Indiana County border.**" N.T. 9/25/19, p. 25 (emphasis added). Given defendant's admission, as well as the other evidence of record, any issues defendant is attempting to raise relative to the Glen Campbell crimes occurring in Indiana rather than Clearfield County, and the Clearfield County District Attorney lacking authority to consent to charges being filed in Cambria County, are without merit.

Also in a jurisdictional context, defendant next purports to assert a procedural challenge relative to noncompliance with Pennsylvania Rule of Criminal Procedure 555, Transfer of Proceedings, which provides in pertinent part:

> (A) In all cases in which charges arising from a single criminal episode occur in more than one judicial district:

15

(1) If the charges are filed in more than one judicial district, at any time after the case is held for court, the proceedings may be transferred to one of the judicial districts.

(2) If all the charges are filed in one judicial district, at any time after the case is held for court, the proceedings may be transferred to another one of the judicial districts.

Pa.R.Crim.P. 555(A).

However, as the Commonwealth notes, Section (A)(1) is not applicable, as the parties agree that charges were only ever filed in Cambria County, but not Clearfield County. Defendant attempts to assert the applicability of Section (A)(2), and alleges Attorney Burns' ineffectiveness for failing to pursue and discuss a transfer of the charges to Clearfield County.

At the PCRA hearing, Attorney Burns testified that because he engaged in so many conversations with defendant, he could not recall a specific discussion with defendant relative to the jurisdictional issue; however, he was sure that they discussed it. N.T. 9/25/19, p.p. 58, 81. Attorney Burns then immediately stated:

> I will be frank with you; I would have wanted it in Cambria County. And based on what was presented to me, I felt Cambria County had jurisdiction. There was allegation of some things that allegedly happened in Clearfield, but I would have wanted it kept here. Now, if it was a close call, I would have had a serious discussion with Mr. King about keeping it in Cambria County. The reason I say that is, and it's no disrespect to our bench, but I have seen some sentences come down in Clearfield that just shocked the conscience in my opinion. I mean, he got 50 to 100 years. He could have got 1,000 years. I mean, I would have wanted to keep the case in Cambria County.

N.T. 9/25/19, p.p. 58-59. Attorney Burns also indicated, "I felt there was enough there for Cambria county to have jurisdiction. To be frank, I think I would have wasted my time to file for a change of venue or jurisdiction, so --." *Id.*, p. 59. Attorney Burns also noted his understanding that the majority of the acts over the alleged years occurred in Cambria County. *Id.*

Given this testimony, we believe that the record is clear that Attorney Burns not only conferred with defendant relative to the jurisdictional issue, but, consistent with his extensive criminal defense experience spanning multiple counties, and knowledge of sentencing

16

prerogatives therein, had an objective reasonable basis for not pursing a transfer to Clearfield County. Thus, we find that defendant's assertion of error relative to Rule 555 must fail.

As his final jurisdictional challenge, defendant also contends that he was deprived of the due process protections afforded by Criminal Rule of Procedure 130. Rule 130 provides in pertinent part:

> (A) Venue. All criminal proceedings in summary and court cases shall be brought before the issuing authority for the magisterial district in which the offense is alleged to have occurred or before an issuing authority on temporary assignment to serve such magisterial district, subject, however, to the following exceptions:
>
> . . .
>
> (3) When charges arising from the same criminal episode occur in more than one judicial district, the criminal proceeding on all the charges may be brought before one issuing authority in a magisterial district within any of the judicial districts in which the charges arising from the same criminal episode occurred.

Pa.R.Crim.P. 130(A)(3). Rule 130 also directs that "Prior to the completion of the preliminary hearing: when charges arising from a single criminal episode, which occurred in more than one judicial district, are filed in one judicial district, upon the filing of a written agreement by the attorneys for the Commonwealth, the proceedings shall be transferred to the magisterial district in the judicial district selected by the attorneys for the Commonwealth. Pa.R.Crim.P 130(B)(1)(a)(ii). Relative to Rule 130, defendant asserts that no agreement between the district attorneys was filed prior to the end of the preliminary hearing, or at any time; and that the letter offered at trial by the prosecutor does not conform to the requirements of Rule 130, as it was not filed, nor was it signed by both district attorneys. In turn, defendant contends that Attorney Burns failed him by neglecting to object to the venue transfer "agreement" from Clearfield to Cambria County.

We first note that Attorney Burns did not represent defendant at the January 21, 2015 Preliminary Hearing, and at no time did defendant raise an ineffective assistance of counsel claim relative his representation at the Preliminary Hearing. As to any alleged error by Attorney Burns in failing to challenge venue after the case was bound to Court, we defer to

17

the aforesaid analysis regarding defendant's Rule 555 contention. To reiterate, we find the record supportive of the fact that Attorney Burns reviewed the issue of proceeding in Cambria County with defendant, and had a reasonable strategy for not pursuing a change of venue to Clearfield County. Thus, defendant's issue lacks merit.

As his next allegation of error, defendant contends that the Sentencing Court abused its discretion during the sentencing hearing by allowing evidence by other alleged victims and prior bad acts. Specifically, defendant asserts that we erred in permitting the Commonwealth, over defense counsel's objection, to present testimony from two aunts of the victim. During their testimony, both aunts referenced sexual, physical, and mental violence that the defendant had perpetrated upon them during childhood.

In response to defense counsel's objection, the Assistant District Attorney stated the following during an offer of proof as to both aunts:

> I believe the family members of the victim are allowed to testify in matters as to how this has effected [sic] them. Further, we have two people who are prior victims of Mr. King who want to address the Court. They have addressed the Court before at a bond hearing many, many months ago and are here today to tell the Court what their feelings are; and they are family members of the victim. They are aunts of the victim.

N.T. 5/1/17, p.p. 5-6. Over the continuing objection of defense counsel, we stated our ruling as follows:

> The Commonwealth does have a lot of leeway at sentencing. I think what I will do as a result of your objection is the previous people that testified at the bond, unless there's — I don't want to hear a repetition of what they testified to before. The only thing I would be — I think would be relevant is if there would be any activity or any contact or anything they could testify to since that time to this time.

Id., p. 6. In response, the Commonwealth stated:

> They just want to make brief statements as to their feelings and fear of him getting out. And they're very brief statements.

Id.

The record is clear that we attempted to limit the aunts' testimony from the time of the 2015 bond hearing until present, while at the same time acknowledging the liberties afforded

18

to the Commonwealth relative to its sentencing presentation. Because both aunts provided a thumbnail sketch of the abuse that defendant inflicted upon them years ago, their testimony exceeded the limits of our ruling. However, both accounts were very brief, and only after each testified, but not during, did defense counsel renew a continuing objection. *Id.* at p. 9. Given the solemn tenor of the proceeding, we also did not interrupt their testimony, though irrelevant.

> Pennsylvania jurisprudence relative to irrelevant testimony at sentencing is as follows:

> It is an abuse of discretion, as a denial of due process of law, for the sentencing court to consider irrelevant factors during sentencing. Thus, previous sentences have been vacated because, in imposing sentence, the sentencing court relied upon, *e.g.:* the defendant's decision to stand trial rather than plead guilty, *Commonwealth v. Bethea,* 474 Pa. 571, 580, 379 A.2d 102, 106, 107 (1977); prior constitutionally infirm convictions, *Commonwealth v. Calvert,* 463 Pa. 211, 344 A.2d 797 (1975); the defendant's political ideology, *Commonwealth v. Berrigan,* 369 Pa.Super. 145, 535 A.2d 91 (1987) (*en banc* ), *allocatur denied,* 521 Pa. 609, 557 A.2d 341 (1989), *cert. denied,* 493 U.S. 883, 110 S.Ct. 219, 107 L.Ed.2d 173 (1989); unverified hearsay, *id.;* and the defendant's status as a naturalized citizen, *Commonwealth v. Dugan,* 335 Pa.Super. 82, 483 A.2d 965 (1984).

> It is not enough that a trial court simply *entertained* impermissible evidence in its deliberations. **A court is 'ordinarily presumed to be capable of identifying and properly disregarding all but the most prejudicial and inflammatory evidence.'** *Commonwealth v. Penrod,* 396 Pa.Super. 221, 578 A.2d 486, 491 (1990). **Thus, a sentence must be vacated only where 'it reasonably appears from the record that the trial court *relied* in whole or in part upon such [an impermissible] factor.'** *Commonwealth v. Bethea, supra,* 379 A.2d at 107 (emphasis added).

*Com. v. Smithton,* 631 A.2d 1053, 1056–57 (Pa. Super. 1993) (emphasis added).

In light of this standard, much in the same manner that we consider prior convictions, pre-trial evidentiary and suppression issues, and other non-favorable information revealed in the pre-sentence investigative report, we believe that the Court, unlike a jury, is legally capable of separating past acts from the present case, and did so in the instant matter. In fact, we acknowledged this fact immediately prior to sentencing defendant as to the 54 of 58 counts of sexual crimes for which he was convicted by stating:

19

I compliment both counsel for their advocacy relative to their specific client or clients. And I'm tasked with the job of being the gatekeeper, and I'll proceed with that task at this point.

N.T. 5/1/17, p. 27. Thus, clearly cognizant of our role at the time of sentencing, we do not believe that defendant was prejudiced by the aunts' testimony. Moreover, because we did not rely upon the aunts' testimony in fashioning our sentence, we believe that defendant cannot prove an abuse of discretion and that his claim in this regard is without merit.

Defendant next ascribes error to the Court in failing to provide an adequate reasoning on the record for the sentence of 55 years to 110 years imprisonment imposed on May 1, 2017. In support of his position, defendant relies upon Section 9721(b) of Pennsylvania Consolidated Statutes governing the Judiciary and Judicial Procedure, which provides in pertinent part, that "[i]n every case in which the court imposes a sentence for a felony or misdemeanor, [. . .] the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed." 42 Pa.C.S. § 9721(b). Ultimately, defendant alleges that he was given a lengthy sentence because of the sexual nature of the crimes, and that his sentence was not sufficiently individualized.

In *Commonwealth v. Walls*, our Supreme Court observed that the parameters of appellate review of the discretionary aspects of a sentence are confined by the dictates of 42 Pa.C.S. § 9781(c) and (d). *Com. v. Walls*, 926 A.2d 957 (Pa. 2007). Section 9781(c) states in relevant part that the appellate court may " . . . vacate the sentence and remand the case to the sentencing court with instructions . . ." if it finds that "the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable." 42 Pa.C.S. § 9781(c)(3). Section 9781(d) provides that when reviewing a sentence, the appellate court must consider:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

20

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(d).

The *Walls* Court noted that the term "unreasonable" generally means a decision that is either irrational or not guided by sound judgment. *Walls*, 926 A.2d at 963. It held that a sentence can be defined as unreasonable either upon review of the four elements contained in § 9781(d) or if the sentencing court failed to take into account the factors outlined in 42 Pa.C.S. § 9721(b)[2]. *Id.* at 964.

When imposing a sentence of total confinement, the sentencing judge must state the reasons for the sentence in open court. *Com. v. Reynolds*, 835 A.2d 720, 734 (Pa. Super. 2003). Furthermore, the sentencing judge must explain any deviation from the sentencing guidelines. *Com. v. Simpson*, 829 A.2d 334, 338 (Pa. Super. 2003). Nevertheless, a lengthy discourse on the trial court's sentencing philosophy is not required. *Id. See also, Com. v. Malovich*, 903 A.2d 1247, 1253 (Pa. Super. 2006); *Com. v. McAfee*, 849 A.2d 270, 275 (Pa. Super. 2004). Rather, **the record as a whole** must reflect the court's reasons and its meaningful consideration of the facts of the crime and the character of the offender. *Malovich*, 903 A.2d at 1253. *See also, Crump*, 995 A.2d at 1283; *Com. v. Anderson*, 830 A.2d 1013, 1018, 1019 (Pa. Super. 2003).

In light of this standard, we believe that the record as a whole demonstrates the rationale for our sentence, as well as our careful consideration of the specific facts of this case

---

[2] Section 9721(b) states in pertinent part:

the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. The court shall also consider any guidelines for sentencing adopted by the Pennsylvania Commission on Sentencing[.]

21

and the defendant's character. Firstly, this case was assigned to the undersigned by the President Judge during its early stages, namely, bond proceedings, in 2015. Prior to the May 1, 2017 Sentencing Hearing, this Court selected two juries, one having been called off following the Commonwealth's aforementioned interlocutory appeal; rendered various pre-trial rulings; authored a 1925(a) Opinion to the Pennsylvania Superior Court following the Commonwealth's interlocutory appeal; decided numerous Rule 600 Motions; conducted several hearings relative to bond conditions and bond revocation; and presided over a 2-day jury trial. Thus, at sentencing, the undersigned was intimately familiar with the factual allegations of this case, defendant's character, and the respective positions of counsel.

Following the defendant's conviction on February 7, 2017, we directed the Cambria County Probation Bureau to complete a presentence investigative report and sentencing guideline forms by April 20, 2017. *See* Order of 2/7/17. Additionally, in anticipation of issues that would arise at sentencing, we directed counsel to submit memos by April 20, 2017 relative to merger and the effects of Megan's Law relative to the sentences to be imposed. *Id.*

Prior to the sentencing hearing, we authored correspondence to counsel acknowledging the necessity of compliance with 42 Pa.C.S. § 9718.2(c), which affords both the Commonwealth and the offender the right at a hearing to contest the offender's record prior to the Court imposing a mandatory sentence for sexual offenders. Additionally, at the outset of the sentencing hearing, we referenced the receipt of reply correspondence from both counsel that neither was contesting defendant's prior record, which included a 2011 conviction for Possession of Child Pornography (F3), thus eliminating the need for a special hearing. N.T. 5/1/17, p. 2. Further, prior to sentencing, we entertained commentary from the Commonwealth that rather than continue sentencing to enable defendant to challenge the sexual violent predator determination by the Sexually Violent Predator Assessment Board, the Commonwealth was willing to forego the Court from designating defendant as such, and

22

proceed with sentencing. *Id.* at p.p. 2-4. Additionally, we referenced the presentence report, which we had fully reviewed, and ascertained that defendant was afforded an opportunity to review same. *Id.* at p. 4. We also considered the comprehensive and thorough presentations from counsel, and complimented counsel relative to their advocacy. *Id.* at p.p. 5-27.

As indicated *supra*, immediately prior to sentencing, we acknowledged our role as gatekeeper. *Id.* at p. 27. When sentencing, we imposed standard range sentences, as well as mandatory sentences. At the conclusion of sentencing relative to each count, we noted that as to Docket 233-2015, Counts 29 through 32, 33 through 42, 43 through 50, and 51 through 58, we found merger with the IDSI counts. *Id.* at p. 31. In doing so, we specifically adopted the defendant's pre-sentence brief as our rationale, thus evidencing our comprehensive review of the issue. *Id.* At the conclusion of sentencing, we also reflected that we essentially imposed a life sentence, which we deemed appropriate following much deliberation. *Id.* at p. 32.

Overall, we believe that this record exemplifies our extensive familiarity with defendant and this case, as well as our extensive effort to gather all necessary information to formulate a well-reasoned, cohesive, and logical sentencing scheme. Specifically, prior to sentencing, we corresponded with counsel, and required the preparation of memos and a pre-sentence investigative report. At sentencing, we referenced the pre-sentence investigative report, the sexually violent predator designation, the memos and correspondence from counsel, and stated that sentence was imposed only after much deliberation. Further, we rendered a sentence in accordance with the standard ranges of the sentencing guidelines, did not aggravate same, and applied the required mandatory terms of incarceration. Accordingly, a review of the record in its totality readily overcomes defendant's contention that PCRA relief is warranted based upon a lack of sentencing rationale and the imposition of a generic, biased sentence.

23

In his PCRA Petition, defendant also itemizes eight "Additional Claims for Relief," some of which were further probed at the September 25, 2019 PCRA hearing. For the sake of thoroughness, we will address each briefly forthwith.

Defendant first asserts that he was subject to two unconstitutional 25-year mandatory sentences pursuant to 42 Pa.C.S. § 9718.2(a)(1), based on *Alleyne v. United States*, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013), and *Com. v. Wolfe*, 140 A.3d 651 (2016). However, as defendant's Petition fully acknowledges, and as the Commonwealth emphasized at PCRA hearing, this issue was already extensively reviewed by the undersigned, and the Superior Court. Additionally, the Supreme Court denied *certiorari*. Thus, we believe that this PCRA issue is waived, and is without arguable merit.

Secondly, defendant alleges a conflict of interest between himself and the undersigned, as we handled the plea/sentence relative to defendant's prior conviction for Possession of Child Pornography (F3) at Docket 826-2011.

Despite this contention, at the PCRA hearing, defendant could not articulate an actual reason for the conflict, other than stating a "personal feeling," and that he "can't base [it] in facts, just opinion." This allegation is vague, at best. Moreover, as Attorney Burns indicated at the PCRA hearing, this Court's lack of bias against defendant was best evidenced by our favorable pre-trial ruling barring the Commonwealth from introducing Dr. Kupchella's supplemental expert report on the eve of trial. As additional evidence of our lack of ill-will, we granted defendant's Rule 600 Motion for nominal bail. Further, Attorney Burns could not recall defendant repeatedly requesting him to file a recusal motion, and Attorney Burns indicated that he rarely requests judicial recusal, unless the judge is actually a party to the lawsuit. Accordingly, defendant's "personal feeling" of bias must fail.

Thirdly, defendant asserts trial counsel's ineffectiveness for failing to obtain records and develop testimony and argument at trial relative to three separate Children and Youth

24

investigations, between 2010 and 2013, that resulted in unfounded reports relative to defendant giving his son drugs and alcohol, and allegations of sexual and physical abuse. Defendant suggests that while physical abuse does not equate with sexual abuse, CYS investigations would have provided his son with multiple forums to make an allegation of sexual abuse, and since he did not do so, trial counsel should have emphasized this to the jury at the time of trial.

Similarly to his rationale for not calling a defense expert and for not requesting various curative instructions, Attorney Burns testified at the PCRA hearing that he avoided inquiry as to CYS proceedings as he was trying to keep many doors shut. For instance, he explained that he feared that exploration of unfounded CYS allegations would open doors for the Commonwealth to inquire into defendant's status as a Megan's Law registrant, due to his Possession of Child Pornography conviction. We think this is reasonable trial strategy, sufficient to preclude a finding of ineffectiveness.

Fourthly, defendant avers that trial counsel provided ineffective assistance by failing to subpoena his former live-in paramour, Alicia Jolley, to testify at trial. Specifically, defendant asserts that because she worked from home, counsel could have questioned her relative to her failure to observe any illicit activity in the household.

Attorney Burns specifically recounted at the PCRA hearing that he searched for Ms. Jolley in an effort to subpoena her for trial, but could not ascertain her whereabouts. In fact, because he was unable to locate her, Attorney Burns could not even recall ever having conversed with her. Because he diligently attempted to reach Ms. Jolley, we do not believe that Attorney Burns can be deemed ineffective merely because his efforts were unsuccessful. Thus, defendant's claim is non-meritorious.

Fifthly, defendant asserts that trial counsel was ineffective for failing to renew his motion in limine at the time of trial to preclude testimony from his former paramour, Virginia

25

Stuller, who also resided with the defendant and victim during the time of some of the alleged crimes. At the PCRA hearing, defendant opined that he believed her testimony relative to seeing him shower with his son was more prejudicial than probative. Defendant also indicated that he did not understand the problem, as parents shower with their kids all the time.

At the PCRA hearing, Attorney Burns explained that because of the highly prejudicial nature of Ms. Stuller's testimony, he filed a pre-trial Motion in Limine to exclude her testimony. He also raised the issue with the Superior Court on appeal. Because this issue was previously litigated, we believe it is waived for PCRA purposes. Thus, defendant's claim of ineffectiveness in this regard is without merit.

Sixthly, defendant contends that trial counsel was ineffective for failing to utilize a preemptory strike against a juror(s) who might have gone to church with one of the prosecutors. When questioned by PCRA counsel about this point, defendant responded that two members of the jury pool indicated that they went to church with the prosecutor, and another lived in her gated community. However, the defendant was unable to recollect if said persons were actually selected as jurors, as he "was in a bit of a daze."

When questioned about this issue at the PCRA hearing, Attorney Burns likewise recalled that two or three members of the jury pool indicated that they were familiar with Assistant District Attorney Bolton-Penna, as they either attended the same church and/or lived in her neighborhood. However, when questioned during *voir dire*, Attorney Burns was confident that all jurors indicated a lack of bias/prejudice, regardless of their association. Although the Jury Selection portion of the trial has not been transcribed, this is the Court's recollection as well. Accordingly, defendant's issue is not only speculative, but lacks merit.

As his seventh additional claim, defendant alleges that the sentencing court failed to give adequate notice at the time of sentence regarding the deadlines to file post-sentence motions and direct appeal.

As defendant's own PCRA Petition acknowledges, at the conclusion of sentencing, we conducted the following colloquy with the defendant relative to a standard 2-page document routinely used by the Court to advise of various post-sentence and appellate rights following sentencing:

> THE COURT: Have you signed a two-page document that explains your post sentence appeal rights?
> ATTORNEY BURNS: No, he hasn't.
> THE COURT: Would you do that please? Go over that with him and have it signed please.
> ATTORNEY BURNS: There you go, Your Honor.
> THE COURT: Mr. King, did you sign a two-page document that explains your post sentence appeal rights?
> THE DEFENDANT: Yes, I did.
> THE COURT: Do you understand those rights?
> THE DEFENDANT: Yes. For the most part, yes.
> THE COURT: Do you have any questions about those rights?
> THE DEFENDANT: I'll ask him at a later date, or ask you through him.

N.T. 5/1/17, p. 32. This exchange clearly evidences defendant's affirmation of his comprehension of his rights. Additionally, he had the benefit of the advice and assistance of counsel, and Attorney Burns indicated at the PCRA hearing that he routinely advises clients, as he did with defendant, that he will handle the filing of all post-sentence issues/appeals. Attorney Burns likewise indicated that although he could not speak to defendant's mindset relative to his comprehension of his post-sentence and appellate rights, defendant had been very involved throughout all phases of this litigation. Moreover, Attorney Burns did in fact file post-sentence motions and a direct appeal on defendant's behalf. Based on the totality of these factual circumstances, we believe that defendant's claim lacks merit.

As his last written additional claim, defendant contends that trial counsel provided ineffective assistance by failing to interview and procure trial testimony from "Rusty," last

27

name unknown, an individual who provided family counseling services and would have testified as to the victim's manipulative behavior.

At the PCRA hearing, defendant testified that he wrote to Attorney Burns on several occasions asking that he subpoena Rusty for trial. Attorney Burns recalled defendant's correspondence; however, he was unable to locate Rusty. Because Attorney Burns attempted to locate Rusty, and was responsive to his client's requests, we do not believe relief is warranted merely because his efforts were unsuccessful. Thus, defendant's claim must fail.

At the conclusion of his PCRA testimony, PCRA counsel asked defendant if there were any other issues that he would like to raise. In response, defendant referenced various letters, that he wrote to PCRA counsel as to points that he wanted to include in his PCRA Petition, such as a 572 violation in regard to the Information; invalid warrant; Rule 645 issue regarding alternate juror; ineffective assistance of counsel for not objecting to the testimony of the CYS worker, Alex Ciotti; ineffective assistance of counsel for not impeaching Virginia Stuller using information about defendant turning her in to the IRS; executing a Court Order without having the Order present; ineffective assistance of counsel in various other regards; failure to file suppression motions; further review of jury instructions; subject matter jurisdiction; and other issues. However, beyond identifying these various issues, defendant did not expound upon any, let alone explain why PCRA relief is warranted. Additionally, defendant agreed, in response to PCRA counsel's questioning, that the Amended PCRA Petition was only filed after the two had engaged in lengthy meetings at the jail. Further, defendant acknowledged that PCRA counsel's Amended Petition addresses several of these issues, such as the jurisdictional issue.

Pennsylvania jurisprudence is clear that allegations not raised in a final, supplemental petition filed on petitioner's behalf are not preserved for post-conviction review. *See Com. v. Ashley*, 419 A.2d 775, 777-78 (Pa. Super. 1980). While we acknowledge that PCRA counsel

28

went above and beyond to ensure that defendant had full opportunity to present all desired claims, we are unable to meaningfully address defendant's fragmented and disjointed commentary. Moreover, a review of the record demonstrates PCRA counsel's belief that he had pursued all proper claims in the Amended Petition, or had advised defendant that some issues lack merit. Overall, we do not find merit within any of defendant's oral concerns that were not incorporated into the counseled Amended Petition, and believe that PCRA relief is not warranted.

Accordingly, based upon all of the aforementioned, we find that defendant has not sustained his burden of proving the ineffective assistance of trial counsel, error by the Sentencing Court, or additional claims, and we deny PCRA relief. The following Order shall issue:

# IN THE COURT OF COMMON PLEAS OF CAMBRIA COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

COMMONWEALTH OF
PENNSYLVANIA,

v.

DAVID M. KING,

Defendant.

```
*
*
*            233·15
*    No. 223-2015
*
*
*
*
```

## ORDER

AND NOW, this ___7TH___ day of November, 2019, upon consideration of defendant's Amended Petition Pursuant to the Post-Conviction Relief Act (PCRA), as well as the testimony presented at hearing on September 25, 2019, and the supplemental memos of counsel, it is hereby **ORDERED and DIRECTED** that said Petition is **DENIED**.

The Defendant is notified that he has thirty (30) days to appeal this Order to the Superior Court of Pennsylvania.

BY THE COURT:

_____
David J. Tulowitzki, Judge

COPIES TO:
☑ DEF.     ☐ C & F
☑ DA       ☐ SHERIFF
McQuillin ☑ ATTY.   ☐ OTHER
☐ PO
☐ PD
☐ JAIL
☐ JUDGE
☑ CA

CLERK OF COURTS
CAMBRIA COUNTY
2019 NOV -7 A 10: 05
FILED FOR RECORD

30